659 P.2d 306

**ARAGON & McCOY, a partnership, et al., Plaintiffs-Appellants,**

v.

**ALBUQUERQUE NATIONAL BANK, as Trustee for the Estate of Alva J. Coats, et al., Defendants-Appellees.**

No. 14488.

Supreme Court of New Mexico.

Feb. 18, 1983.

Marchiondo & Berry, Patricia Ortiz, Albuquerque, for plaintiffs-appellants.

Keleher & McLeod, Arthur O. Beach, Albuquerque, for defendants-appellees Nesbit & Coats.

Anita P. Miller, Asst. City Atty., Albuquerque, for defendant-appellee City of Albuquerque.

## OPINION

PAYNE, Chief Justice.

Appellant Aragon & McCoy (Aragon), a partnership, sued the City of Albuquerque to recover damages it incurred when the City failed to issue additional building permits beyond the initial permit for Phase I of its construction project. The complaint was filed on February 9, 1979, and in Feb-

ruary 1982, the trial court entered summary judgment on behalf of the City on two grounds: 1) sovereign immunity and 2) the statute of limitations. Aragon now appeals. We affirm.

Many of the relevant facts of this case are recited in *Nesbit v. City of Albuquerque,* 91 N.M. 455, 575 P.2d 1340 (1977), in which the City litigated similar issues that arose out of this same construction project. However, for purposes of clarity, we outline the factual history of this case in relevant detail.

### I.

In 1966, Byron Nesbit and Alva Coats applied for a zoning change allowing a broader range of uses regarding certain construction site property in Bernalillo County. The request was granted, and an initial development plan for 83 condominium units was approved. In 1972, Nesbit and Coats applied for a new site development plan which increased the density from 83 condominiums to 287 efficiencies and apartments. In 1973, the density was reduced from 287 to 274 units and the district court approved the new site development plan. In 1974, Aragon, now associated with Nesbit and Coats, spoke with a city official who allegedly informed it that the property was approved for 274 units. The project to build the units laid dormant for several years while financing was obtained. In September 1976, Aragon obtained a building permit for Phase I of the project. When construction began in November 1976, neighbors surrounding the construction site brought a motion to intervene and a motion to set aside the 1972 district court decision. Both motions were granted by the district court, and in February 1977, the change in the 1972 site development plan was invalidated on the ground that proper notice of the re-zoning had not been given to the intervening neighbors. Thus, at this time, the only zoning in effect for the property was the 83 units approved in 1966. In November 1976, after construction began, Aragon was sued by the City. However,

Aragon continued to expend substantial sums of money for its construction project and thereafter joined Nesbit and Coats to fight the City.

In February 1977, the City sent Aragon a letter indicating that although Aragon could complete Phase I of the project, no future building permits would be issued because the matter was in litigation and the permit might be found invalid. Also, testimony was heard which indicated that when Aragon's architect for the project went to City Hall to "walk around his plans," he saw a notation on the site development plan that stated "[h]old all permits pending court action." In December 1977, this Court affirmed the February 1977 district court decision which invalidated the 1972 site development plan. *Nesbit v. City of Albuquerque, supra.* Between the time we affirmed this decision and the City denied Aragon a permit for Phase II, Aragon submitted a new site development plan proposing a density of 252 units. The City denied this plan. Alternatively, Aragon resubmitted a new plan which reduced the density to 200 units. The City Planning Commission denied the plan and said it would not approve a density of more than 16 units per acre for 141 units for the site. Finally, Aragon submitted a plan for 16 units acre. This plan was approved.

## II.

Aragon argues that the City is not immune from suit based on the theories of zoning estoppel and inverse condemnation.

■ Aragon notes that the City issued building permits for Phase I of the project, then refused to issue building permits for additional phases, despite the fact that the City had approved Aragon's site development plan. Because a valid permit was issued for Phase I, and Aragon made substantial expenditures in reliance on the existing zoning of the property, Aragon argues that any subsequent change in zoning by the City amounts to zoning estoppel. In support of this argument, Aragon cites *Sautto v. Edenboro, Inc. Apartments,* 84 N.J.Super. 461, 202 A.2d 466 (1964), and

*Tremarco Corp. v. Garzio,* 32 N.J. 448, 161 A.2d 241 (1960).

In *Sautto,* the New Jersey Supreme Court stated that a previously issued permit is not per se protected from revocation or subsequent changes in zoning, and that reliance on the permit must be clearly established for an estoppel argument to succeed. In *Sautto,* a builder was issued a building permit, and the municipal building inspector assured him that changes in the zoning would not affect his property. Because the builder made financial commitments based on this representation, the City was held to be estopped from not issuing the building permit.

*Sautto* is easily distinguished from the present case. Unlike the building inspector in *Sautto,* the city official with whom Aragon spoke made no assurances that Aragon could build the 274 units; he merely responded to a question which solicited his opinion as to how the existing property was zoned at the time. Admittedly, Aragon made financial commitments which were adversely affected by the rezoning. However, a substantial percentage of these commitments was made after Aragon was put on notice that its zoning was in question and could be found invalid. In the instant case, no representations or assurances were made by the city official from which Aragon could reasonably conclude that it had permission to build. Even if Aragon made its financial commitments based on a firm belief that it would win the pending lawsuit, such a belief is insufficient to support an estoppel argument. The record clearly indicates Aragon was on notice that it was proceeding at its peril if it continued to make these expenditures. Furthermore, even if Aragon had not received this notice, the record also reflects that the bulk of these expenses were made for Phase I rather than Phase II of the project. Even the expenditures made to pave roads and drain arroyos on the property, allegedly made for Phase II, had to be made anyway in order to complete Phase I. For example, whether 83 or 283 units were planned, arroyos had to be drained and roads had to be built in and around the project.

The *Tremarco* case is equally distinguishable. *Tremarco* also involved the issuance of a building permit later invalidated by a change in the zoning of the property. However, like *Sautto,* the builders' reliance in *Tremarco* occurred after specific assurance in writing had been received from a city official that the building permit would be valid in the face of subsequent zoning changes. In the instant case, a lawsuit was pending which could have invalidated the zoning for the entire building project. There is no evidence that the city official gave written or verbal assurances that the project was legal or approved. Rather, he merely stated that the property was currently approved for 274 units. Thus, both *Tremarco* and *Sautto* are factually distinguishable from the instant case and have no application.

There is authority which we consider more analogous to the instant case. In *Colonial Inv. Co., Inc. v. City of Leawood,* 7 Kan.App.2d 660, 646 P.2d 1149 (Kan.App. 1982), the plaintiff raised a zoning estoppel argument based on the fact that city officials had made representations to Colonial about the zoning classification before it purchased the property. The court found that the actions and statements made by these officials were made with the specific purpose of inducing Colonial to buy or build on the property. The court found that these statements could not reasonably be construed to be an intent on the part of the officials to induce Colonial to buy the subject property. In the instant case, as in *Colonial,* matter of fact statements about the nature of the zoning were made in response to requests for information. In the instant case, the city official merely responded to Aragon's question regarding the zoning of the property by stating that he believed the property was approved for 274 units. His response was not an inducement. Nor did he make promises, assurances or representations that the City would continue this zoning. Thus, the statements made by the city official in the instant case were not inducements upon which Aragon could have reasonably relied. Accordingly, Aragon's estoppel argument must fail.

In conjunction with the equitable argument of estoppel, Aragon raises the constitutional issue of vested rights. Specifically, Aragon argues that the denial of additional permits violated a vested property right it acquired when its development plan was approved and it was issued a permit for Phase I. This argument is without merit. We have previously held that property owners have no vested rights in a particular zoning classification. *See Miller v. City of Albuquerque,* 89 N.M. 503, 554 P.2d 665 (1976). Furthermore, no particular significance should be attributed to the fact that the City approved Aragon's site development plan, and then later rezoned the property. A site development plan is no more than a particular zoning designation for a piece of property which is just as vulnerable to rezoning, especially when that rezoning is based on the City's valid exercise of its police power and its concern for the health, safety, and welfare of its citizens. Merely because a permit was issued for one part of the construction project does not guarantee vested rights in the remainder of the project. *Rogin v. Bensalem Tp.,* 616 F.2d 680 (3d Cir.1980). Although zoning laws which reduce the density of dwelling units must be justified by some aspect of the City's police power, we hold that such measures are constitutional if they bear a substantial relation to the public health, safety, morals, or general welfare of its citizens. We find the City's decision to reduce the density of Aragon's proposed dwelling units to be based on these constitutional concerns.

Aragon also contends that the City is not immune from suit by virtue of New Mexico's inverse condemnation statute, Section 42A–1–29, N.M.S.A.1978, which removes the City from sovereign immunity when it "takes or damages" property rights of its citizens without compensation. Aragon argues that it acquired a constitutionally protected property right when it obtained the initial building permit and that because the City neglected to issue additional permits, its property right in the entire project was

taken or damaged without compensation. We disagree.

 Because Aragon did not raise the issue of inverse condemnation at trial, we hold that it cannot raise this theory for the first time on appeal. *Schreiber v. Armstrong,* 70 N.M. 419, 374 P.2d 297 (1962). Even if we were to assume that Aragon had properly raised an inverse condemnation argument at trial, the argument would still fail. The change in the zoning of Aragon's property was based on the concern that any more than 141 units would be too dense a concentration of dwelling units. Such grounds for zoning changes have always been within the valid police power of a municipality on the ground that they further legitimate governmental interests. *City of Santa Fe v. Gamble-Skogmo, Inc.,* 73 N.M. 410, 389 P.2d 13 (1964). This Court has clearly indicated that "only if the governmental regulation deprives the owner of *all beneficial use* of his property will the action be unconstitutional." *Euclid* at 505. (Emphasis added). Aragon obtained a permit and financing for Phase I only. Aragon's beneficial use of and interest in Phase I was not disturbed by the City. In fact, Aragon admits it is certain to make a profit on Phase I of the project. Although Aragon may not reap the profit it could have made had the entire project been developed, it certainly did not lose all beneficial use of the property. Thus, we hold that no taking or inverse condemnation occurred.

## III.

The City, in its motion to dismiss, argued that this suit is barred by applicable statutes of limitations. The trial court agreed with this argument and treated the motion as a summary judgment. Aragon argues that if this is a condemnation case, the complaint filed on February 9, 1979, was within the three-year statute of limitations pursuant to Section 42A–1–31, N.M.S.A. 1978 (1981 Repl.Pamp.). Alternatively, Aragon argues that if this is an action arising in tort, the filing of its complaint was within the two-year statute of limitations required by the Tort Claims Act.

 Because Aragon's initial complaint alleges that the zoning change arose from the negligent acts of the City in failing to issue additional permits, and because Aragon failed to argue inverse condemnation in the court below, we determine that the case sounds in tort and should therefore be governed by the two-year statute of limitations required by the Tort Claims Act. The date on which Aragon filed its complaint (February 9, 1979) is undisputed, however, the time the two-year statute of limitations began to run is argued by the parties.

We hold that Section 41–4–15 A, N.M.S. A.1978, of the Tort Claims Act is dispositive:

A. Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of *occurrence resulting in loss, injury* or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file. This subsection applies to all persons regardless of minority or other legal disability. (Emphasis added).

The plain language of the statute indicates that the period of limitations began to run when an "occurrence resulting in loss" took place. Until such a loss took place, the statute of limitations could not begin to run.

Like the trial court, we agree that the date of accrual could have begun on several dates when Aragon suffered loss or injury. In October 1976, the neighbors filed suit which eventually resulted in the invalidation of Aragon's site development plan. On February 3, 1977, Aragon's application for a Phase II building permit was denied. Aragon submits that injury or loss occurred when the Supreme Court ruled on March 31, 1978. In our opinion, the very last event which might be characterized as a loss or injury was the district court's February 8, 1977 order which vacated the 1972 decision approving the construction of 287 dwelling units. As a result of this order,

Aragon's approval to build dwelling units was reduced in number from 287 to 83 units. In our view, this is a clear "occurrence resulting in loss" and thus marks the last date on which the statute could have begun to accrue. Because Aragon filed this action on February 9, 1979, over two years from the date of this order, we conclude that it is barred by the Tort Claims Act.

### IV.

Accordingly, we affirm the trial court's summary judgment dismissing all claims against the City.

SOSA, Senior Justice, and FEDERICI, J., concur.