247 N.J. Super. 285 (1990)
588 A.2d 1297
BURLINGTON ASSEMBLY OF GOD CHURCH, PLAINTIFF,
v.
ZONING BOARD OF ADJUSTMENT, TOWNSHIP OF FLORENCE; AND TOWNSHIP OF FLORENCE, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
November 28, 1990.
*288 Frederick W. Hardt for plaintiff.
Arthur L. Shanker for defendant Board of Adjustment (Weiner, Ostrager, Fieldman & Zucker, attorneys).
William B. Hildebrand for defendant Township of Florence (Slimm, Dash and Goldberg, attorneys).
WELLS, III, A.J.S.C.
By Order signed on February 24, 1988 Judge Haines reversed the Florence Township Zoning Board's decision to deny plaintiff a variance to erect a radio station including two transmission towers on its property. N.J.S.A. 40:55-70(d). On May 5, 1988, he declined to certify the decision as final for appeal purposes while at the same time granting the Township's request to stay his February Order temporarily pending resolution of a claim for damages by plaintiff. About a year later in a published decision, Judge Haines ruled that plaintiff had been deprived of its freedom of speech by virtue of the actions of the Zoning Board in denying the variance, and that it was entitled "to recover such damages as it may prove." Burlington Assembly of God Church v. Florence, 238 N.J. Super. 634, 570 A.2d 495 (Law Div. 1989).
Judge Haines retired before reaching trial on the damages issue and the same was held before me. The plaintiff Church introduced evidence of loss of profits the proposed station would have made between September 24, 1985, the date of the Zoning Board's original denial, and July 27, 1989;[1] increased costs of erecting the station itself and certain other expenses largely attributable to prosecuting the zoning case, including an allocated portion of the salaries of Church staff in connection therewith. Total damages sought are between $700,000 and $800,000 plus counsel fees under 42 U.S.C. § 1988.
*289 While Judge Haines' opinion is laden with language that the central injury to the Church was the deprivation of its First Amendment rights, I cannot conclude, reading it as a whole that he intended to award damages measured by the projected income and increased expenses elicited at the trial before me flowing from the Church's inability to broadcast during the zoning application process and ensuing litigation. Traditional analysis of damages where zoning regulation has been found to unconstitutionally prohibit or inhibit uses of property proceeds on the theory that property has been taken. Such claims are treated as actions for inverse condemnation and awards are based upon the value of the property affected.
Judge Haines himself clearly recognized that approach in several cases where the First Amendment concerns were not at stake but where claims under 42 U.S.C. § 1983 had been made. Sheerr v. Evesham Tp., 184 N.J. Super. 11, 56-59, 445 A.2d 46 (Law Div. 1982); Woodsum v. Pemberton Tp., 172 N.J. Super. 489, 526-527, 412 A.2d 1064 (Law Div. 1980).
In Sheerr he wrote:
The EP-1 ordinance has been shown to violate the Due Process and Equal Protection Clauses of the State and Federal Constitutions. It may therefore be invalidated. However, plaintiff seeks different relief, namely, damages under 42 U.S.C.A. Sec. 1983. May she recover?
This question, in a zoning context, is very troublesome. If the answer is yes, every invalid zoning regulation which depreciates the value of a property, no matter how little, will invite a suit for damages. Zoning regulations always affect property values, sometimes favorably, sometimes not. A right to collect damages under the Civil Rights Act for an unreasonable and unfavorable regulation, regardless of the amount of loss, would have vast economic consequences for every governmental body exercising regulatory powers. Its stifling effect upon innovative land use planning is obvious.
The logic of plaintiff's position is clear. However, that logic is one-sided; it ignores public consequences which invite a logical analysis running in a different direction. Some balancing of public and private interests must take place when remedies for invalid zoning legislation are addressed; if private remedies impose too heavy a burden upon the public, everyone loses. Some restriction of remedies is necessary. Sheerr, Id. [184 N.J. Super. at] 58 [445 A.2d 46].
In Woodsum he stated:
Plaintiffs here seek damages for the inconvenience, discomfort and expense caused by their forced move as well as an award for the damage to the dwelling *290 caused by vandalism, all in addition to their "taking" claim. These are consequential damages. They are extremely speculative. They are not recoverable in the usual condemnation case, whether inverse or otherwise, under the State or Federal Constitutions. (footnote omitted)
The Civil Rights Act should not be interpreted as expanding the damage concept of taking cases. The act was designed, as its language clearly states, to permit recoveries when there has been a deprivation of constitutional rights. When there has been a condemnation through appropriate statutory proceedings or as the result of an inverse condemnation, the recovery does not include consequential damages. The Civil Rights Act is not intended to enhance the award which a litigant would have received had his constitutional rights not been denied. In a zoning case, where a taking was claimed, damages have been so limited. Sixth Camden v. Evesham, supra. Woodsum, Id. [172 N.J. Super.] at 526 [412 A.2d 1064].
Other cases support the proposition that damage to the property itself is the proper measure of damages. In the case of 6th Camden Corp. v. Evesham Tp., 420 F. Supp. 709, 728-729 (D.C.N.J. 1976), Judge Brotman held:
Zoning damage claims, by their nature, seem narrowly limited to effects occurring during the interim period for which the invalid restriction was in effect. The compensation for a "temporary taking" is normally the fair rental value of the property. E.g., United States v. General Motors Corp., 323 U.S. 373, 382, 65 S.Ct. 357 [361], 89 L.Ed. 311 (1945); Kimball Laundry Co. v. United States, 338 U.S. 1, 7, 69 S.Ct. 1434 [1438], 93 L.Ed. 1765 (1949). And substantial authority from the taking cases seems to indicate that, when land is taken without compensation, future profits from the use of the land may not be compensable. See, e.g., Mitchell v. United States, 267 U.S. 341, 344-45, 45 S.Ct. 293 [294], 69 L.Ed. 644 (1925); R.J. Widen Co. v. United States, 357 F.2d 988, 994, 174 Ct.Cl. 1020 (1966); A.G. Davis Ice Co. v. United States, 362 F.2d 934, 936 (1st Cir.1966).
Nonetheless, the chance exists that because of the heightened sensitivities surrounding the deprivation of a First Amendment right and the natural desire to deter such conduct that Judge Haines was prepared to move beyond the limitation of awards measured by the value of property taken to losses directly attributable to the deprivation of the constitutional right. Whether he was or not, I have given the matter considerable thought and now decide for the reasons stated hereinafter that the proper measure of damages in these cases is the loss in property value, if any. Recovery for consequential damages even in the case of an institutional First Amendment user should continue to be barred.
*291 First, research has not produced a single case which awards consequential damages to an institutional First Amendment user under 42 U.S.C. § 1983 for the temporary deprivation of that constitutional right as the result of the arbitrary imposition of a zoning regulation or the denial of a variance. This seems to represent a significant consensus that land use controls and their administration directly affect property and therefore that unconstitutional deprivations thereof are best measured by the loss in land values, if any. Secondly, even if one were inclined to award loss of profits and the like to institutional and commercial First Amendment users such as churches, book stores, newspapers, radio and TV stations, theaters, and outdoor advertisers for wrongful zoning decisions, it could not be so limited. Eventually, such damage awards could not logically be withheld from other businesses claiming such losses. At that point the threat of such damage claims in every case against municipalities and zoning boards would have a significant negative influence on zoning and planning decisions and impact the carefully constructed cloak of independence achieved by the quasi-judicial nature of zoning and planning boards and the immunities protecting their individual members. Cf. Centennial Land & Dev. Co. v. Tp. of Medford, 165 N.J. Super. 220, 397 A.2d 1136 (Law Div. 1979); Anastasio v. Planning Board of Tp. of West Orange, 209 N.J. Super. 499, 507 A.2d 1194 (App.Div. 1986). Judge Haines recognized the problem in Sheerr when he wrote "... if private remedies impose too heavy a burden on the public, everyone loses. Some restriction of remedies is necessary." Sheerr, Id. 184 N.J. Super. at 58, 445 A.2d 46.
Considered then by a damage measure consisting of loss to property value, plaintiff here proved only nominal damage. The only actual damages, if any, were entirely consequential in nature. The fact is plaintiff continued to actively occupy and use its property for religious purposes for the entire 21 months it awaited a favorable zoning decision. There was, in fact, no actual taking of a part of its property let alone all of its *292 property as a result of the variance denial. The proposed radio station was never more than one of plaintiffs' several religious and community projects all of which proceeded unabated pending the variance. As to the Church's land, the proposed radio station was clearly a use accessory to the principal use of the property as a fully developed and functional place of religious worship and religious education. In my opinion, then, these facts prevent the Church from recovering damages based on projected losses of profit from such a temporary deprivation of an accessory use or increased costs incident to erecting the station. In a different factual context, Judge Haines wrote:
In addressing the damage question, consideration has been given to the question of whether plaintiff, in fact, suffered damages. She held the land for investment purposes, speculating on its increase in value. She may or may not have been able to sell the property, absent improper zoning. It is apparent that she cannot claim lost profits; such profits would be too uncertain to permit proof. See 6th Camden, supra. The only loss that plaintiff can show is the loss of all selling prospects because of the restrictive zoning. That circumstance, however, should entitle plaintiff to recover reasonable damages; it is apparent that lost opportunity has value, however difficult it is to measure. The recovery of option value, based upon the market value of the land without zoning, fairly recognizes that loss and encourages the township to act appropriately by adopting permissible zoning or purchasing the land. Sheerr, Id. 184 N.J. Super. at 65, 445 A.2d 46.
In this case none of plaintiff's property was on the market or held for "investment" purposes. While increased revenue from the proposed station might translate into a measurable increase in the value of the Church's lands, such was not the point of the plaintiffs' proofs. The Church was clearly interested in the station as an adjunct to its religious mission; not to increase the value of its land. This case is entirely distinguishable from First English Evangelical Lutheran Church v. Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). There a church whose campground was entirely destroyed by a flash flood was forbidden to rebuild in the flood plain by a Los Angeles ordinance. The Supreme Court ruled upon the theory of a "temporary taking", compensation could be awarded under the Fifth Amendment. Here, the temporary deprivation of an accessory use of plaintiff's property by denial of the variance *293 did not result in any taking justifying an award of consequential damages. See Moore v. City of Costa Mesa, 678 F. Supp. 1448 (C.D.Cal. 1987). There the Court said:
Moore argues in response that the city's action did constitute a total taking of the strip of his land nearest Wilson Street. However, as the Supreme Court stated in Penn Central Transp. Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), "`[t]aking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether ... a taking [has occurred], this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole[.]" See id. at 130-31, 98 S.Ct. at 2662; see also Keystone Bituminous Coal Ass'n. v. DeBenedictis, 480 U.S. 470, 107 S.Ct. 1232, 1248, 94 L.Ed.2d 472 (1987); Andrus v. Allard, 444 U.S. 51, 65-66, 100 S.Ct. 318, 326-27, 62 L.Ed.2d 210 (1979). The proper focus is on Moore's entire parcel of land, and it is clear that the city's condition did not constitute a taking of Moore's entire parcel.
Moore does not allege any actual physical invasion of his property; rather, he alleges a regulatory taking. Compare Loretto v. Teleprompter Manhatten CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). It is settled that government regulation does not constitute a taking merely because it affects the value of a property. See Agins [v. City of Tiburon], 447 U.S. [255] at 263 n. 9, 100 S.Ct. [2138] at 2143 n. 9 [65 L.Ed.2d 106 (1980)]; Danforth v. United States, 308 U.S. 271, 285, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939). Regulation only constitutes a taking if it "`denies an owner economically viable use of his land'" or if it "`interfere[s] with reasonable investment backed expectations'" in that use. DeBenedictis, 107 S.Ct. at 1247 (citations omitted) (holding that Pennsylvania's anti-subsidance act limiting the operation of coal mines did not effect a taking). The appellant in First Church successfully pled this; Moore has not and cannot. He pleads that the expense of building his improvements increased during the delay and that he lost the use of the improvements for the period of the delay. These losses do not rise to the level of an unconstitutional taking. See DeBenedictis, 107 S.Ct. at 1247. (footnotes omitted) Moore, Id., at 1451-52.
What the Court has held respecting the projected station profits is also true of the increased costs incident to building the station resulting from inflation and other factors between the first application for the variance and the vacation of the temporary stay against building it, a period of three years ten months. Those costs are consequential in nature and not compensable under the Fifth Amendment or 42 U.S.C. § 1983 in this inverse condemnation case.
*294 Finally, the Court finds no basis for an award of expenses incident to the process of obtaining a variance including the allocable portion of salaries, overhead or costs and fees, incident to the station's obtaining or maintaining its FCC license. The Church never took the position that as to it the statutory variance procedure was itself unconstitutional. Indeed, it concedes the zoning ordinance was content neutral and that Churches may be subject to reasonable municipal zoning and planning regulation under the Land Use Law. Of course, here, the actions of the defendants amounted to a temporary deprivation of an accessory and incidental use of part of the church property  but, one which it failed to prove had any impact whatsoever on the value of that property.
For the above reasons, the Court finding no proof of any actual damages will enter Judgment of nominal damages in the traditional amount  six cents ($.06). I further conclude that plaintiff has not "prevailed" upon its claims under 42 U.S.C. § 1983 and will accordingly make no award of counsel fees under 42 U.S.C. § 1988.
NOTES
[1] July 27, 1989 is the date Judge Haines vacated the temporary stay he had previously entered on May 5, 1988. Thereafter, as a legal matter, the Church could proceed with building the station.