894 P.2d 1041

Henry MANDEL, Plaintiff–
Appellee/Cross–
Appellant,

v.

CITY OF SANTA FE, Santa Fe City Council, Mayor Sam Pick, Councilor Ouida MacGregor, Councilor Phillip Griego, Councilor Frank Montano, Councilor Larry Delgado, Councilor Arthur Sanchez, Councilor Steven Farber, Councilor Debbie Jaramillo, and Councilor Peso Chavez, Defendants–Appellants/Cross–Appellees.

No. 15679.

Court of Appeals of New Mexico.

April 24, 1995.

Karl H. Sommer, Sommer, Fox, Udall, Othmer, Hardwick & Wise, P.A., Santa Fe, MacDonnell Gordon, Gordon & Larson, Santa Fe, for plaintiff-appellee/cross-appellant.

Janet E. Clow, Carolyn R. Glick, White, Koch, Kelly & McCarthy, P.A., Santa Fe, for defendants-appellants/cross-appellees.

## OPINION

PICKARD, Judge.

This case concerns the development of two-story residences in the Westside–Guadalupe historic district of Santa Fe. The developer's (Mandel) plan was denied by the City of Santa Fe's zoning authorities and the City Council (City). The district court reversed the City's denial of permits on the basis that "by changing the rules in the middle of the game, the City played unfairly," thereby denying Mandel his right to due process. The City appeals. Mandel cross-appeals, seeking to support the district court's decision on alternative grounds and alleging certain errors in the district court's decision. We reverse the district court's decision and uphold the City's action.

FACTS

At the time that Mandel first sought approval for his construction project from the Historic Design Review Board (Board), the Santa Fe City Code prohibited the Board from limiting the height of any building in the historic district to a lesser height than that allowed by the underlying zoning. Mandel's proposal was twice tabled by the Board in order to allow Mandel to revise his proposal to satisfy stylistic concerns and neighbors' concerns. During the time that Mandel's proposal was tabled, the City amended the Code to permit the Board to limit the height of structures within certain historic districts to lesser heights than that allowed by the underlying zoning (the Height Amendment).

Several months thereafter, the Board again considered Mandel's proposal and denied it, pursuant to the Height Amendment, based on the existence of inappropriate second-story structures. The City affirmed the denial.

On petition for writ of certiorari to the district court, Mandel argued that the Height Amendment could not be applied to his proposal for three reasons: (1) it unlawfully delegated the City's zoning authority to the Board; (2) it violated his right to equal protection because a similar development was later permitted under the Amendment; and (3) it violated his right to due process because it constituted an unlawful down-zoning and it retroactively applied the Height Amendment to his proposal. The district court found Mandel's first two arguments without merit, but determined that due process had been violated by the application of the Height Amendment to Mandel's proposal.

APPEAL

■■■ The City appeals contending that the district court erred in holding that the Height Amendment could not be applied to Mandel's proposal. We agree with the City that this case is controlled by *Brazos Land, Inc. v. Board of County Commissioners*, 115 N.M. 168, 848 P.2d 1095 (Ct.App.1993), and we decline to revisit that case. In a case whose operative facts were nearly identical to those here, this Court held that an unapproved proposal was not a "pending case," within the meaning of the New Mexico Constitution, article IV, section 34, which states that "[n]o act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." We stated that the submission of a subdivision plat application did not achieve pending case status. *Brazos*, 115 N.M. at 171, 848 P.2d at 1098.

We further stated in *Brazos* that "for purposes of determining which regulations apply to a subdivision plat application, we believe that a vested rights analysis is the better reasoned approach rather than further semantic refinement of the meaning of 'pending' for purposes of a rigid article IV, section 34 analysis." *Id.* Therefore, the proper analysis here should not be whether the proposal was a "pending case," but whether

Mandel had a "vested right" in his development pursuant to the ordinance prior to the Height Amendment. Since the project had not been approved, Mandel had no vested right in having the less restrictive height requirement applied to his project. *See In re Sundance Mountain Ranches, Inc.*, 107 N.M. 192, 194, 754 P.2d 1211, 1213 (Ct.App.) (issuance of written approval for building permit, together with substantial change in position in reliance thereon, is required before vested rights arise), *cert. denied*, 107 N.M. 267, 755 P.2d 605 (1988).

Mandel argues that *State ex rel. Edwards v. City of Clovis*, 94 N.M. 136, 607 P.2d 1154 (1980), rather than *Brazos*, controls this case. He contends that *Edwards* was not, and could not have been, overruled by *Brazos* and that *Edwards* supports his argument that the City could not change its ordinances and then apply them to his project. In *Edwards*, a petition for writ of mandamus was filed with the district court in an attempt to force the City to apply an existing ordinance. Thereafter, the City adopted a new ordinance and then used the new ordinance as the basis of its argument against issuance of the writ. In *Brazos* and this case, the new ordinance was applied to an unapproved application for a project. *Brazos* did not overrule *Edwards*, and it is still good law under those facts. However, *Edwards* does not apply here.

We hold that the district court erred in finding that the City "played unfairly" in applying the Height Amendment to Mandel's project. An application for approval is not a pending case, and Mandel did not have a vested right in having the old ordinance applied to him. Moreover, chaos would occur if it would be "unfair" to apply land-use regulations to people who had merely submitted their first application for approval. Upon hearing of the possible enactment of new regulations, people would rush to city hall to file applications and preserve their right to proceed under an old law. Such a result would thwart an orderly governmental process. The *Brazos* formulation protects people in their rights without unnecessarily tying government's hands. Therefore, the City

acted lawfully in applying the Height Amendment to Mandel's proposed development.

CROSS–APPEAL

■ Mandel appeals the district court's determination that his unlawful delegation and equal protection arguments were without merit. He also contends that the district court erred in failing to find that the application of the Height Amendment was an unlawful down-zoning of his property.

Mandel argues that permitting the Board to apply the Height Amendment to his property effectively permitted the Board to engage in zoning and rezoning, which are outside the Board's delegated authority. We disagree. In *City of Santa Fe v. Gamble–Skogmo, Inc.*, 73 N.M. 410, 389 P.2d 13 (1964), the Supreme Court upheld the general concept of historic districts and permitted the "style committee" to pass on details concerning building within those districts, within broadly-stated standards. Consistent with the approval in *Gamble–Skogmo*, the Height Amendment here permits the Board to limit the height of buildings, as well as to require set-backs of different floor levels, to conform to the streetscape in the historic district. Therefore, the Board had the authority to enforce the Height Amendment.

Mandel claims that enforcement of the Height Amendment changed the governing zoning designation for his property, which could not be done by the Board. The premise of Mandel's argument is that, if the underlying zoning permits a certain height, any lessening of that height is, in effect, a change in the zoning. Again, we disagree. Enforcement of the Height Amendment was not a rezone. The property was zoned RM–1, but it was also located in an historic district. Therefore, it was subject to the more restrictive requirements of the historic district. The fact that the Board is now permitted to restrict height does not mean the property has been rezoned. *See Viti v. Zoning Bd. of Review*, 92 R.I. 59, 166 A.2d 211, 213–14 (1960). In fact, the property remains zoned RM–1 in an historic district.

■ Mandel also argues that he was denied equal protection because another's application to build two-story residences in the same historic district was approved ·shortly after the Board denied his application. A different result in another case without more is not a showing of unlawful discrimination. *See State ex rel. Bingaman v. Valley Sav. & Loan Ass'n*, 97 N.M. 8, 9 n. 2, 636 P.2d 279, 280 n. 2 (1981). We find no error in the district court's conclusion that there was no evidentiary support in the record for Mandel's equal protection argument.

Finally, Mandel argues that the application of the Height Amendment to his project was an unlawful down-zoning of his property. This argument was raised below as a variation of his due process and fairness argument, an argument upon which he prevailed below. Therefore, we treat this issue as an alternative ground to affirm the decision of the district court. *See* SCRA 1986, 12–201(C) (Repl.1992). We reject Mandel's argument because acceptance of it in the context of this case, which involves an amendment to the zoning laws that has city-wide application, would be inconsistent with the rationale of *Brazos*.

■ Down-zoning is defined as rezoning property to a more restrictive use. *See Davis v. City of Albuquerque*, 98 N.M. 319, 321, 648 P.2d 777, 779 (1982); *Miller v. City of Albuquerque*, 89 N.M. 503, 506, 554 P.2d 665, 668 (1976). Mandel's argument is that, by applying the Height Amendment to his property, the City has rezoned his property to a more restrictive use. For purposes of evaluating Mandel's argument concerning fairness, we accept the notion that the allowable use of his property has been restricted and therefore the general principles of *Davis* and *Miller* would apply.

■ However, we do not agree that there has been a down-zoning here as would be prohibited under *Davis* and *Miller*. In both of those cases, the City of Albuquerque made a piecemeal change to its comprehensive zoning ordinance. In *Miller*, only a single landowner was affected. *Miller* held that a "piecemeal zoning change" to a more restrictive classification must be supported by a showing of mistake in the original zoning or change in the character of the neighborhood. *Id.* at 506, 554 P.2d at 668. In *Davis*, only

an eight-block area of a particular neighborhood was adversely affected. The Supreme Court in *Davis* stated that the *Miller* holding must be considered in its context, which was an unreasonable zoning of a small piece of land, and it held that the facts of that case were insufficient to distinguish it from *Miller*. *Davis*, 98 N.M. at 321, 648 P.2d at 779.

Here, there was no rezoning that affected only Mandel's property or even Mandel's neighborhood. Rather, the City adopted a height restriction that could be generally applied to all properties in historic districts in the City. There is no contention that the City did not give adequate notice in compliance with applicable statutes for its adoption of the Height Amendment. Once a law is adopted, we know of no authority that would require the government to give specific notice to citizens that it intends to apply the law to them. Therefore, without ruling on the precise boundaries of *Davis* and *Miller*, we can confidently say that they are not controlling in this case in which the Height Amendment was enacted on a city-wide basis. There was no unlawful down-zoning here as that term is used in *Davis* and *Miller*. There was also no unfair failure to play by the rules. *See Brazos*, 115 N.M. at 170–71, 848 P.2d at 1097–98.

CONCLUSION

We hold that the City could properly apply the Height Amendment to Mandel's application, and we reverse the order of the district court and remand for entry of an order affirming the decision of the City denying Mandel's development application.

IT IS SO ORDERED.

ALARID and BUSTAMANTE, JJ., concur.