900 P.2d 973

**PDR DEVELOPMENT CORPORATION,
Defendant–Appellant,**

v.

**CITY OF SANTA FE, Plaintiff–Appellee.**

**No. 15470.**

Court of Appeals of New Mexico.

June 16, 1995.

Certiorari Denied Aug. 8, 1995.

---

C. Bryant Rogers, F. Joel Roth, Roth, VanAmberg, Gross, Rogers & Ortiz, Santa Fe, for defendant-appellant.

Barbara J. de Weever, Mark A. Basham, Asst. City Attys., Santa Fe, for plaintiff-appellee.

## OPINION

PICKARD, Judge.

PDR Corporation appeals an order denying its counterclaim for money damages on a theory of inverse condemnation. PDR's brief attacks the trial court's findings that the City of Santa Fe's actions did not cause its damages. Rather than focus on the narrow attack on the findings, we consider this case in broader perspective. In essence, PDR's contention is that it was entitled to damages in the form of lost profits for loss of contracts to sell the property resulting from the erroneous application of a zoning ordinance by the City. PDR makes this claim under either the takings or the damages provisions of Article II, Section 20 of the New Mexico Constitution. We hold that neither the takings provision nor the damages provision allows PDR to recover the damages it claims because lost profits is not the proper measure of damages for a temporary taking resulting from the erroneous application of a zoning ordinance. We also hold that, under the facts of this case, PDR was limited to the remedy of damages for a temporary taking of its real property under the traditional before and after rule used in condemnation cases. Because PDR did not offer any evidence of these damages, we hold that the trial court properly ruled that PDR did not sustain its burden of proving damages. Accordingly, we affirm.

PDR owned property on which condominiums were situated. It purchased the property in 1987 with a down payment of approximately $500,000 and the remainder of the purchase price ($4,400,000) financed in such a way that only interest would be due for two years and the principal would be due in a balloon payment in 1989. The property was in an "RM" (multiple family residential) district. At about the same time PDR purchased the property, the City was attempting to restrict businesses such as hotels in residential neighborhoods. PDR rented the units on a short-term basis, including by the day to transients. Unaware that PDR was using the property for short-term rental, the City enacted a zoning amendment which prohibited short-term rentals in RM-zoned districts. After the amendment, the City received complaints from PDR's neighbors that PDR was renting its units for overnight occupation. The City issued two cease and desist orders, in August and December 1988, but PDR continued its rental operation. PDR claimed that its operation did not fit the definition of a prohibited "all-suite hotel" under the zoning amendment.

On August 15, 1988, PDR executed a contract with a Texas developer to sell the property. That contract guaranteed PDR a payment of $2,000,000 and obligated the developer to pay off the balloon payment of $4,400,000, due in July 1989. It also allowed for the possibility of further profits as the property was developed. As a backup, PDR negotiated a similar contract with another party on August 25, 1988, but the backup contract did not provide for further profits. Both contracts were expressly contingent on the lawful use of the property for daily rentals. During negotiations to withdraw the first cease and desist order, the City was aware of the pending contracts for sale, but not of the details of the contracts.

In March 1989, the City filed for an injunction in order to stop PDR from using the property in violation of the zoning amendment. Prior to the date that the City filed its lawsuit, the Texas developer twice agreed to extend the contract closing date in order to allow PDR to resolve the zoning issue. Eventually, the developer withdrew his offer. The backup purchaser also withdrew its offer. Evidence presented by PDR indicated that, in addition to the zoning problems, the

prospective buyers were unhappy with the negative publicity surrounding the continued rental operation by PDR. Ultimately, PDR was unable to make the July 1989 balloon payment and lost the property in foreclosure proceedings.

In November 1989, after the City filed for an injunction, PDR filed a first amended answer and counterclaim alleging that issuance of the cease and desist order amounted to a taking and PDR was entitled to damages for inverse condemnation. After proceedings not relevant to this appeal, the case went to trial and the trial court ruled against PDR on its inverse condemnation claim. On appeal, as it did at trial, PDR claims that the City's action in issuing the cease and desist orders and refusing to withdraw them amounted to a taking for which it is entitled to damages with respect to the lost contracts.

PDR argues that the City's actions amounted to a taking or damage to its contract rights. PDR contends that it is entitled to compensation of $2,000,000 for loss of the sales contracts. PDR arrives at this figure by subtracting the amount of the balloon payment due on the property from the total amount to be paid for the property as listed in the sales contracts. PDR concedes that it has been unable to find a case supporting its entitlement to such damages. We review the law governing takings, including those takings resulting from application of land-use regulation, both from New Mexico and other jurisdictions, to determine if PDR's claim has merit.

▪ In cases involving the lawful application, of a zoning ordinance, a taking results when the zoning change deprives the property owner of all beneficial use of the property. *See Aragon & McCoy v. Albuquerque Nat'l Bank,* 99 N.M. 420, 424, 659 P.2d 306, 310 (1983); *Miller v. City of Albuquerque,* 89 N.M. 503, 505, 554 P.2d 665, 667 (1976). In this case, the trial court determined that the application of the ordinance to PDR was unlawful, and the City has not filed a cross-appeal from that ruling. *See Paiz v. State Farm Fire & Casualty Co.,* 118 N.M. 203, 210, 880 P.2d 300, 307 (1994). With respect to the unlawful application of a zoning ordinance, some courts again require removal of

all beneficial use of the property in order for the action to be compensable. *See Burlington Assembly of God Church v. Zoning Bd. of Adjustment,* 247 N.J.Super. 285, 588 A.2d 1297, 1300–02 (Law Div.1990) (in case involving erroneous denial of zoning variance, no taking occurred where owner continued to use property for some purposes); *cf. First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 316, 318, 107 S.Ct. 2378, 2386, 2387, 96 L.Ed.2d 250 (1987) (case implies that all beneficial use must be removed in order for taking to be compensable). Other courts hold that where a zoning ordinance is wrongfully applied and then withdrawn, a temporary taking occurs even where all beneficial use of the property was not removed by application of the ordinance. *See Eide v. Sarasota County,* 908 F.2d 716, 721 (11th Cir.1990), cert. denied, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991); *Yuba Natural Resources, Inc. v. United States,* 904 F.2d 1577, 1580–81 (Fed.Cir.1990); *Schwartz v. City of Flint,* 426 Mich. 295, 395 N.W.2d 678, 686–87 (1986); *Whitehead Oil Co. v. City of Lincoln,* 245 Neb. 680, 515 N.W.2d 401, 411 (1994). New Mexico has not addressed this issue in the context of the unlawful application of a zoning ordinance. We need not decide the issue in this case because we hold that the damages sought by PDR are not recoverable under any circumstances.

Whether a taking deprives the property owner of some or all beneficial use, the measure of damages in temporary-takings cases is the market rate of return on the difference in the fair market value of the property without the restriction and the fair market value of the property with the restriction for that period of time during which the restriction was in place. *See Wheeler v. City of Pleasant Grove,* 833 F.2d 267, 270 (11th Cir. 1987) (court applied market rate of return on the difference in fair market values with and without the restriction over period of temporary taking); *Schwartz,* 395 N.W.2d at 686–87; *Whitehead,* 515 N.W.2d at 411; *Sheerr v. Township of Evesham,* 184 N.J.Super. 11, 445 A.2d 46, 73 (Law Div.1982); *see generally* 2 Dan B. Dobbs, *Law of Remedies* § 6.9(1) & (2) (2d ed. 1993). The existing law in New

Mexico is similar. While there is language in some cases about "consequential" damages, *see Zobel v. Public Service Co.,* 75 N.M. 22, 24, 399 P.2d 922, 923 (1965); *Board of County Comm'rs v. Harris,* 69 N.M. 315, 317, 366 P.2d 710, 712 (1961), the Court in *Harris* said that the measure of those damages is the "before and after rule." *Id.* at 318, 366 P.2d at 712; *see also* NMSA 1978, § 42A–1–26 (Repl.Pamp.1994) (measure of damages in partial condemnation is difference between the fair market value of remainder immediately before and immediately after the taking); SCRA 13–710 (uniform jury instruction to the same effect).

■ To the extent that PDR claims the City's actions operated as a condemnation of its contract rights, a type of personal property for which just compensation is due when they are taken for public use, we disagree. This case does not involve a law or a public body directly abrogating contract rights. *See United States Trust Co. v. New Jersey,* 431 U.S. 1, 19 n. 16, 29 n. 27, 97 S.Ct. 1505, 1516 n. 16, 1521 n. 27, 52 L.Ed.2d 92 (1977). Rather, this case involves a public body's enforcement of a general zoning law that had consequential effects on PDR's contracts. Recovery of consequential damages of this sort is not supported by case law. *See Yuba,* 904 F.2d at 1581–83 (measure of damages for temporary taking was lost rents or royalties, not lost profits or consequential damages); *Florida Rock Indus. v. United States,* 791 F.2d 893, 903 (Fed.Cir.1986) ("frustration in performance of even an existing contract is not a taking of contract rights, still less a hope of future profitable contracts"), *cert. denied,* 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987) (citation omitted).

Courts have found that the fair market value measure of damages already takes into account fluctuations in market expectations, including lost future profits. *See Whitehead,* 515 N.W.2d at 411 (separate award for lost profits would constitute double recovery because fair market value reflects market estimate of future profits); *Sheerr,* 445 A.2d at 75 (loss of selling prospects and lost opportunity for profit has value which is already recognized in the change in fair market value); *see also Burlington,* 588 A.2d at 1300

(consequential damages usually not recoverable in condemnation cases even where deprivation of First Amendment rights involved); *cf. Board of Trustees v. B.J. Serv., Inc.,* 75 N.M. 459, 461, 406 P.2d 171, 172 (1965) (separate items such as relocation costs can be used as aids in determining before and after property market values, but are not, by themselves, proper elements of damage).

■ Based on the foregoing, we hold that the proper measure of damages in this case would not include compensation related to lost profits from contingent sales contracts. Instead, the proper measure of damages would be based on the property's fair market value before the restriction compared to the fair market value with the restriction, taking into account the market rate of return on that difference for the amount of time that the restriction was in place. PDR did not present any evidence of any proper measure of damages and rested on its assertion that it was entitled to the $2,000,000 that the buyers had agreed to pay; alternatively, PDR claimed entitlement to at least its down payment of $500,000. PDR conceded that it suffered no temporary market damages during the time of the restriction, such as loss of rental income, because PDR defied the orders and stayed in business. As the damages PDR sought did not meet PDR's burden of proof, *see Yates Petroleum Corp. v. Kennedy,* 108 N.M. 564, 567–69, 775 P.2d 1281, 1284–86 (1989), the trial court's ruling was correct.

The decision of the trial court is affirmed.

IT IS SO ORDERED.

BLACK and BOSSON, JJ., concur.