1998-NMCA-099

961 P.2d 785

**SANTA FE TRAIL RANCH II, INC., Plaintiff–Appellant,**

v.

**THE BOARD OF COUNTY COMMISSIONERS OF SAN MIGUEL COUNTY, New Mexico, Defendant–Appellee.**

No. 18477.

Court of Appeals of New Mexico.

June 3, 1998.

James P. Fitzgerald, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, David E. Romero, Jr., The Romero Law Firm, P.A., Las Vegas, for Appellant.

Jesus L. Lopez, Las Vegas, for Appellee.

## OPINION

PICKARD, Judge.

{1}  In this sequel to *Brazos Land, Inc. v. Board of County Commissioners*, 115 N.M. 168, 848 P.2d 1095 (Ct.App.1993), and *Mandel v. City of Santa Fe*, 119 N.M. 685, 894 P.2d 1041 (Ct.App.1995), we decide whether a subdivision developer may properly invoke article IV, section 34 of the New Mexico Constitution (prohibiting changing the rights or remedies of parties in a pending case) by

filing a declaratory judgment action one month after a moratorium on subdivisions is formally proposed, but one-half hour before the county commission votes to approve the moratorium. We hold that Santa Fe Trail Ranch II, Inc. (collectively with Santa Fe Trail Ranch, the Developer), may not achieve pending-case status in order to avoid the effect of the moratorium in this manner, but must rely instead on a vested-rights analysis. We additionally reject the Developer's argument that the moratorium was ineffective because the County's original subdivision ordinance was not filed with the State Records Center until eight years after it was enacted and several weeks after the moratorium ordinance was enacted and its argument that it has been deprived of all beneficial use of its property by the moratorium.

## FACTS

{2} The Developer wanted to subdivide its 1,300 acres in San Miguel County into a type-four subdivision of 25 or more parcels of 10 or more acres each. It made application to the County in August 1993. The Developer submitted to the County the various required submittals, and these were reviewed by the appropriate authorities during the fall of 1993. In December of 1993, the County Commissioners, deciding that their current subdivision regulations were ineffective to properly protect the health, safety, and welfare of County residents, enacted an ordinance proposing a one-year moratorium on subdivisions so that new regulations could be enacted. The actual ordinance was to be voted on at the next meeting of the County Commission, which was scheduled on January 25, 1994. At 8:30 a.m. on January 25, the Developer filed a complaint for declaratory judgment, seeking a ruling that the moratorium could not apply to the Developer's proposed subdivision. At 9:00 a.m. that same day, the County Commission voted to enact the moratorium, and it was filed with the County Clerk at 2:40 p.m. and with the State Records Center several days later. Subsequent moratoria were enacted in following years for a total of two and one-half years. Additional facts will be set forth in the discussion of the individual issues.

## DISCUSSION

### 1. Article IV, Section 34

{3} Article IV, section 34 of the New Mexico Constitution prohibits laws from "affect[ing] the right or remedy of either party, or chang[ing] the rules of evidence or procedure, in any pending case." The Developer contends that this provision applies in this case because the complaint for declaratory judgment was filed before the moratorium was enacted and effective.

{4} Three recent cases have applied the law governing this issue to specific facts: *Brazos Land, Inc.* [hereinafter *Brazos*]; *Mandel*; and *State ex rel. Edwards v. City of Clovis*, 94 N.M. 136, 607 P.2d 1154 (1980) [hereinafter *Edwards*]. The Developer relies on *Edwards* while the County relies on *Brazos* and *Mandel*. Examination of the facts and analyses of those cases will demonstrate that this case, too, is more like *Brazos* and *Mandel*, and therefore *Edwards* is not controlling.

{5} Very briefly, *Edwards* involved a longstanding ordinance prohibiting the keeping of swine in city limits within 300 feet of residences. *Edwards*, 94 N.M. at 137, 607 P.2d at 1155. Edwards was a resident, and he sought enforcement of that ordinance because his neighbors were keeping swine in violation of it. *Id.* When the city refused to enforce the ordinance, he filed his lawsuit seeking mandamus. *Id.* During the pendency of the lawsuit, the city passed an ordinance removing the 300-foot restriction in certain areas, including Edwards', thus allowing swine to be kept in his neighborhood. The Supreme Court ruled that article IV, section 34 of the New Mexico Constitution prohibited the application of the new ordinance to Edwards' case. *Id.* at 138, 607 P.2d at 1156.

{6} Both *Brazos* and *Mandel* involved land-use regulations and landowners seeking to develop their land in particular ways. *Brazos* involved a subdivider and a moratorium, as in this case. The subdivider in *Brazos* had made preliminary application to the county for approval of its subdivision when the moratorium was enacted. We applied the moratorium to the subdivider and held that, since no lawsuit had been filed prior to

the enactment of the moratorium, article IV, section 34 did not apply. *Brazos,* 115 N.M. at 170–71, 848 P.2d 1097–98. *Mandel* involved a builder who wanted to construct a building of a certain height. During his permit-application process, the City enacted regulations that lowered the height of buildings allowed in the area. We held that *Brazos,* rather than *Edwards,* controlled. *Mandel,* 119 N.M. at 687–88, 894 P.2d at 1043–44.

{7} We acknowledge that both *Brazos* and *Mandel* were different from this case in that, in those cases, lawsuits were not filed prior to the enactment of the more restrictive land-use regulations. The question we must answer is whether those cases still control under the facts of this case in which a lawsuit was filed. We hold that they do. We base our holding on the purpose article IV, section 34 was designed to serve, as well as our reluctance to allow its manipulation.

■ {8} We explained the purpose of article IV, section 34 at some length in the *Brazos* opinion, and we also expressed our preference in that case for deciding questions of application of newly enacted land-use regulations based on a vested-rights analysis. *See Brazos,* 115 N.M. at 170–71, 848 P.2d at 1097–98. Article IV, section 34 was designed to cure a " 'well-known method ... to win cases in the courts by legislation which changed the rules of evidence and procedure in cases which were then being adjudicated.' " *Id.* at 171, 848 P.2d at 1098 (quoting *Stockard v. Hamilton,* 25 N.M. 240, 245, 180 P. 294, 295 (1919)). In contrast, we explained, the vested-rights analysis seemed to strike the proper balance in a more substantive way between the interest of government in regulating land use and the interest of private parties in using their land in a particular way. *Brazos,* 115 N.M. at 170, 848 P.2d at 1097. For the landowners to prevail, they must show initial approval by the regulatory body, and then they must show that they substantially changed their position in reliance thereon. *See id.* It is only when mere expectation in regard to private land use matures in this fashion into a vested right that the landowner earns the protection of article IV, section 34 against government affecting such a "right ... in any pending

case." We further commented on the rigidity, and hence apparent technicality, of applying article IV, section 34, based on the timing of the filing of a lawsuit, and we explained that the vested-rights analysis was better reasoned. *See id.* at 171, 848 P.2d at 1098. We reiterate that position here.

■ {9} The facts of this case demonstrate why article IV, section 34 should not apply and why the vested-rights analysis strikes the better balance. In *Mandel,* we decried the potential thwarting of orderly governmental process by landowners rushing to city hall to file permit applications upon hearing of the possible enactment of new regulations. *Mandel,* 119 N.M. at 687, 894 P.2d at 1043. It is obvious that what we decried in *Mandel* has happened in this case, only with the rushing to file a lawsuit on the eve of the possible enactment of more restrictive land-use regulations. It is important to point out that no vested rights are at issue in this appeal. The Developer had not secured any County approval of its plan or application, and therefore could not have relied to its detriment. *Cf. In re Sundance Mountain Ranches, Inc.,* 107 N.M. 192, 192, 194, 754 P.2d 1211, 1211, 1213 (Ct.App.1988). While the Developer attempted to make a case for being deprived of vested rights below, such effort appears to have been abandoned. Thus, we can view this case only as one in which there were no vested rights deprived or "affected" within the meaning of article IV, section 34 and no demonstrable unfairness to the Developer. Yet, the Developer, by sheer timing, seeks to win.

{10} We can distinguish this case from *Edwards* in that *Edwards* did not involve a rush to file a lawsuit in order to win. *Edwards* filed a lawsuit to seek enforcement of what was assumed to be existing law. Unlike the mere land-use expectation in the present case, the plaintiff in *Edwards* did not need any further approval by local government to vest in him rights provided by existing law. He only needed the government to enforce what was already his, what had already vested. It was only after the lawsuit was filed that the government sought to change the law, specifically to avoid the effect of his lawsuit. *See id.* at 137, 607 P.2d at

1155. Preventing that from happening is the precise purpose of the shield of article IV, section 34.

{11} The facts are very different in this case. The Developer seeks to use article IV, section 34 not as a shield but rather as a sword to prevent what would otherwise be legitimate governmental action. *See Brazos,* 115 N.M. at 173–74, 848 P.2d at 1100–01 (moratorium on subdivision approval for the purpose of strengthening regulations to preserve the health and safety of inhabitants is a valid and proper exercise of a county's authority). We do not believe that *Edwards* applies to this situation, particularly where property owners' legitimate rights are adequately protected by the vested-rights analysis, and where Developer never advanced his land-use proposal to the point where he had the right to rely on any one, immutable set of rules. We uphold the trial court's grant of summary judgment to the County on this issue.

## 2. Filing with State Records Center

■ {12} The moratorium ordinance enacted in 1994, by its terms, amended the County's original subdivision ordinance that was enacted in 1986. However, the 1986 ordinance was not filed in the State Records Center until February 2, 1994, three days after the 1994 moratorium ordinance was filed there. The Developer contends that because the original subdivision ordinance was void for not having been filed, the moratorium ordinance was also void. *See* NMSA 1978, § 14-4-4 (1995) (providing that rules are not valid until filed with the record's center). (We parenthetically note that the parties proceed under the assumption that Section 14-4-4 applies to this case, and nothing we say is intended to approve that assumption .) However, it is not clear from the Developer's briefs filed in this Court to what relief it claims entitlement on the basis of this issue. In the trial court, the Developer's original complaint sought to require the County to approve its subdivision pursuant to the 1986 ordinance. It was not until after the 1986 and 1994 ordinances were properly filed that the Developer first contended that the moratorium was void because the 1986

ordinance was not filed. It is not clear whether the Developer contends that it is entitled to develop its subdivision because the moratorium was void or because all County subdivision regulation is void as applied to it.

■ {13} We need not resolve issues that are not made clear to us by the parties. *See Clayton v. Trotter,* 110 N.M. 369, 373, 796 P.2d 262, 266 (Ct.App.1990). If the Developer concedes that the 1986 subdivision ordinance was valid enough for obtaining approval of its subdivision, then its only argument is that the 1994 moratorium is invalid as applied to it. We have already addressed that contention in our discussion of article IV, section 34. Certainly, at the time the Developer made its arguments concerning filing in the State Records Center, all pertinent ordinances had been filed. Again, if the Developer cannot prove the elements of a vested-rights analysis, we do not believe that the Developer should prevail on the basis of technical filing requirements that were in fact satisfied prior to the time the Developer argued that they were not satisfied.

## 3. Damages for Temporary Regulatory Taking

{14} The Developer contends that the County's action in enacting the moratorium "deprived it of all reasonable beneficial use of its property" and it is therefore entitled to just compensation for the temporary loss of use. The Developer relies solely on the holding of the United States Supreme Court in *First English Evangelical Lutheran Church v. Los Angeles County,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). As we noted in *PDR Development Corp. v. City of Santa Fe,* 120 N.M. 224, 226, 900 P.2d 973, 975 (Ct.App.1995), while *First English Evangelical Lutheran Church* implies that all beneficial use must be removed for a taking to be compensable, other courts allow compensation for the deprivation of some use. We did not resolve the issue in *PDR, see id.,* and we need not resolve the issue here because the Developer does not contend for the broader rule. Thus, we consider whether the trial court was correct based on the arguments made.

{15}   The trial court granted summary judgment to the County on this issue. The Developer contends that the trial court erred because there is an affidavit in the record by the president of the Developer stating that since the moratorium, the Developer "has been effectively forced to leave its ... property economically idle." The affidavit appears to be based on consultation with land-use experts, but does not explain who they are, what they considered, or what their opinions are, and the affidavit also appears to admit that agricultural use of the property is possible, but denies that it is "economically viable." In our view, this self-serving affidavit without any explanation of the underlying factual basis for its conclusions does not serve to create a material issue of fact that "all reasonable beneficial use" of the property has been deprived by the County's actions. *See Galvan v. City of Albuquerque,* 85 N.M. 42, 44–45, 508 P.2d 1339, 1341–42 (Ct.App. 1973) (holding that affidavits must set forth facts admissible in evidence and explain its conclusions). Accordingly, summary judgment was properly granted on this issue.

## CONCLUSION

{16}   The orders of the trial court granting summary judgment for the County and denying it for the Developer are affirmed.

{17}   **IT IS SO ORDERED.**

APODACA and BOSSON, JJ., concur.