WHITEHEAD OIL COMPANY, A CORPORATION, APPELLEE AND CROSS-APPELLANT, V. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT AND CROSS-APPELLEE.

515 N.W.2d 401

Filed April 22, 1994.    No. S-92-423.

William F. Austin, Lincoln City Attorney, for appellant.

William G. Blake, of Pierson, Fitchett, Hunzeker, Blake & Loftis, for appellee.

Boslaugh, Caporale, Fahrnbruch, and Lanphier, JJ., and Grant, J., Retired, and Rist, D.J., and Ronin, D.J., Retired.

Caporale, J.

### I. STATEMENT OF CASE

This is the third appearance in this court of this longrunning controversy between Whitehead Oil Company, the plaintiff-appellee in this action, and the City of Lincoln, the defendant-appellant herein. In *Whitehead Oil Co. v. City of Lincoln*, 234 Neb. 527, 451 N.W.2d 702 (1990) (*Whitehead Oil*

*I)*, we held that the district court had erred in granting the city a summary judgment on Whitehead Oil's challenge to the city's refusal to grant the former a use permit. Today, in *Whitehead Oil Co. v. City of Lincoln, ante* p. 660, 515 N.W.2d 390 (1994) (*Whitehead Oil II*), we affirmed the district court's subsequent ruling that the city's refusal to grant Whitehead Oil a use permit was arbitrary and capricious, and modified the district court's remand of the matter to the city for reconsideration, directing that the district court instead order the issuance of such a permit, subject to specified conditions.

In this action, the district court enjoined the city from enforcing a zoning ordinance and awarded Whitehead Oil damages in the amount of $762.50 per month from June 1, 1987 (the approximate date on which the city denied issuance of the use permit) to April 1, 1992 (the approximate date of the district court's decree herein), plus an attorney fee. The city appealed to the Nebraska Court of Appeals, assigning errors which may be summarized as claiming that the district court mistakenly (1) ruled the zoning ordinance in question was the result of arbitrary and capricious action and is thus unreasonable and unenforceable, (2) ruled that there had been a taking of Whitehead Oil's property, (3) ruled that the city had violated Whitehead Oil's civil rights, and (4) awarded Whitehead Oil damages. Whitehead Oil cross-appealed, claiming that the district court's award of damages is inadequate. We, pursuant to Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 1992), removed the case to this court in order to regulate the caseloads of the appellate courts and now affirm the decree of the district court, as modified in part V of this opinion, and remand with direction.

## II. SCOPE OF REVIEW

We begin our study of the scope of review by recalling that where a court of equity has obtained jurisdiction of a cause for any purpose, it will retain it for all, and will proceed to a final determination of the case, adjudicating all matters in issue, thus avoiding unnecessary litigation. *Armbruster v. Stanton-Pilger Drainage Dist.*, 165 Neb. 459, 86 N.W.2d 56 (1957). Accord, *Global Credit Servs. v. AMISUB*, 244 Neb. 681, 508 N.W.2d

836 (1993); *Travelers Indemnity Co. v. Heim*, 223 Neb. 75, 388 N.W.2d 106 (1986); *Trump, Inc. v. Sapp Bros. Ford Center, Inc.*, 210 Neb. 824, 317 N.W.2d 372 (1982). An action to declare a zoning ordinance void and to enjoin its enforcement is equitable in nature. *Giger v. City of Omaha*, 232 Neb. 676, 442 N.W.2d 182 (1989); *Sasich v. City of Omaha*, 216 Neb. 864, 347 N.W.2d 93 (1984). That some of the causes presented require us to apply federal substantive law is not significant, for we are free to apply our own procedural rules. *Anderson v. HMO Nebraska*, 244 Neb. 237, 505 N.W.2d 700 (1993).

Thus, while this case presents legal causes as well as the aforedescribed equity cause, we apply the equity standard of review to the entire matter. As that standard is set forth in *Whitehead Oil II*, we do not restate it here.

### III. ANALYSIS OF CITY'S APPEAL

Inasmuch as the relevant facts are set forth in *Whitehead Oil II*, we proceed directly to our analysis of the city's appeal.

#### 1. UNREASONABLENESS OF ZONING ORDINANCE

Our holding in *Whitehead Oil II* resolves adversely to the city its claim in the first summarized assignment of error that the district court erred in finding the zoning ordinance under which the city denied Whitehead Oil a use permit is unreasonable.

Accordingly, nothing further need be said in that regard, except to note that the district court properly enjoined the city from enforcing the ordinance.

#### 2. TAKING OF PROPERTY

In the second summarized assignment of error, the city claims the district court erred in finding that Whitehead Oil's property was temporarily taken.

The Fifth Amendment to the U.S. Constitution provides: "[N]or shall private property be taken for public use, without just compensation." The 5th Amendment is made applicable to the states through the 14th Amendment. *First Lutheran Church v. Los Angeles County*, 482 U.S. 304, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978), *reh'g denied* 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 198.

In addition, Neb. Const. art. I, § 21, provides that the "property of no person shall be taken or damaged for public use without just compensation therefor."

Whitehead Oil seeks damages in inverse condemnation under both the U.S. and Nebraska Constitutions. More specifically, it seeks the fair rental value of its property as a site for a convenience store of the type described in *Whitehead Oil II* from the date its use permit should have been issued.

Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings. *Agins v. Tiburon*, 447 U.S. 255, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980); *Western Fertilizer v. City of Alliance*, 244 Neb. 95, 504 N.W.2d 808 (1993); *Dishman v. Nebraska Pub. Power Dist.*, 240 Neb. 452, 482 N.W.2d 580 (1992). A landowner is entitled to bring an action in inverse condemnation as a result of the self-executing character of the takings clauses of the U.S. and Nebraska Constitutions. *First Lutheran Church v. Los Angeles County, supra*; *Western Fertilizer v. City of Alliance, supra*; *Dishman v. Nebraska Pub. Power Dist., supra*.

### (a) Under Federal Constitution

The city attacks on two grounds the district court's finding that there has been a taking under the federal Constitution. First, it urges that Whitehead Oil is in no position to raise the issue because it has not exhausted its administrative remedies. Second, the city contends that as Whitehead Oil's property could always have been put to some viable economic use, there was no taking.

### (i) Administrative Remedies

The city cites *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S. Ct. 2561, 91 L. Ed. 2d 285 (1986), *reh'g denied* 478 U.S. 1035, 107 S. Ct. 22, 92 L. Ed. 2d 773; *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cty.*, 841 F.2d 872 (9th Cir. 1987), *cert. denied* 488 U.S. 827, 109 S. Ct. 79, 102 L. Ed. 2d 55 (1988), and several other cases for the proposition that damages

for a temporary taking may not be considered in the absence of a final decision regarding application of the offending regulation to the property in question and exhaustion of other administrative remedies. The city then argues that we should not reach Whitehead Oil's takings claim because the city has taken no final action against Whitehead Oil under the current O-3 zoning designation. That argument simply ignores the fact that the city has indeed taken final action; it has denied Whitehead Oil's application for a use permit.

The city's contention that in any event Whitehead Oil should be required to seek a variance from the city's board of zoning appeals so as to determine whether the city would permit the construction Whitehead Oil seeks, notwithstanding the zoning restriction against such a use, fails for two reasons. First, the city's past actions in denying the permit in question establish that such a request would be futile. One is not required to perform a futile act. *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990), *cert. denied* 498 U.S. 1120, 111 S. Ct. 1073, 112 L. Ed. 2d 1179 (1991); *Herrington v. Sonoma County*, 834 F.2d 1488 (9th Cir. 1987), *opinion amended and reh'g denied* 857 F.2d 567 (9th Cir. 1988), *cert. denied* 489 U.S. 1090, 109 S. Ct. 1557, 103 L. Ed. 2d 860 (1989).

Second, the city's board of zoning appeals does not have the power to grant a variance for an unauthorized use. Lincoln Mun. Code § 27.75.040(b) (1987), under the authority granted it by Neb. Rev. Stat. § 15-1106 (Reissue 1991), created a board of zoning appeals with the power

> [t]o hear and decide upon petitions for variances and, subject to such standards, principles, and procedures provided in this title, to vary the strict application of the height, area, parking, density, or sign requirements to the extent necessary to permit the owner a reasonable use of the land in those specified instances where there are peculiar, exceptional, and unusual circumstances in connection with a specific parcel of land, which circumstances are not generally found within the locality or neighborhood concerned.

Thus, the board is empowered to grant variances only as to height, area, parking, density, or sign requirements. These

concepts were clarified in *Alumni Control Board v. City of Lincoln*, 179 Neb. 194, 195-96, 137 N.W.2d 800, 802 (1965), which stated:

> Use variances are customarily concerned with "hardship" while area variances are customarily concerned with "practical difficulty." A use variance is one which permits a use other than that prescribed by the zoning ordinance in a particular district. An area variance has no relationship to a change of use. It is primarily a grant to erect, alter, or use a structure for a permitted use in a manner other than that prescribed by the restrictions of the zoning ordinance. Area variances are principally involved in this case.

While the O-3 zoning district permits consideration of "permitted special uses" in addition to the specifically designated uses, Lincoln Mun. Code § 27.27.030 (1987), none of the categories of special uses encompass the sale of gasoline or goods such as would take place in the convenience store Whitehead Oil contemplates. Thus, Whitehead Oil had no further administrative procedure available to seek a variance.

### (ii) Nature of Property Interest

As the city properly observes, "[p]roperty interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .' " *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). Indeed, in considering the property rights involved in taking claims, the U.S. Supreme Court has referred to the limits imposed by the controlling state law. *Lucas v. South Carolina Coastal Council*, _____ U.S. _____, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992).

Citing *Whitehead Oil I*; *City of Omaha v. Glissmann*, 151 Neb. 895, 39 N.W.2d 828 (1949), *appeal dismissed* 339 U.S. 960, 70 S. Ct. 1002, 94 L. Ed. 1370 (1950), *reh'g denied* 340 U.S. 847, 71 S. Ct. 15, 95 L. Ed. 621; and *Goodwin v. City of Kansas City*, 244 Kan. 28, 766 P.2d 177 (1988), the city argues

that Whitehead Oil can have no vested property right which could be taken, for a landowner has no vested right in a particular zoning designation. Therefore, according to the city, a subsequent change in zoning may be applied retroactively so as to deny a land-use permit which would have been granted at the time the permit was originally sought. However, as pointed out in *Whitehead Oil II*, that argument begs the question of the validity of the subsequent change in zone.

Relying on *First Lutheran Church v. Los Angeles County*, 482 U.S. 304, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987), the city next argues that under the U.S. Constitution, compensation for a temporary taking can only be had when all the economically viable uses have been foreclosed. The *First Lutheran Church* Court, in holding that a landowner may sue for damages when property is "taken" by government regulation, even if the taking is only temporary and the regulation later invalidated, wrote:

> We merely hold that where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective.
>
> . . . We limit our holding to the facts presented, and of course do not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us.

482 U.S. at 321. Similarly, in *Lucas v. South Carolina Coastal Council, supra*, the Court held that even a facially valid regulation forbidding a harmful use not previously prohibited gives rise to compensation if the regulation denies all economically beneficial use of the land. Such a regulation results in a " 'total taking,' " and the owner is entitled to compensation unless the forbidden use was not a reasonable property right under the laws of the state. 112 S. Ct. at 2901.

However, undue focus on these cases ignores the line of cases which recognizes relief is possible from regulatory takings which do not deprive the owner of all economic use of the property.

This problem was addressed in *Lucas*, which explained that although the test for a facial challenge to a taking requires a showing of the denial of all economically viable use of the land, when challenging a regulation "as applied," which is the situation here, a landowner may be entitled to compensation based upon the factors discussed in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978), *reh'g denied* 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 198. *Penn Central Transp. Co.* recognized that determining whether a taking has occurred involves essentially ad hoc factual inquiries, but that the Court's decisions have identified several factors which have particular significance. These factors are the economic impact of the regulation on the claimant; particularly, the extent to which the regulation has interfered with distinct investment-backed expectations; and the character of the governmental action. A taking may more readily be found when the interference can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.

The U.S. Supreme Court has long recognized that a land-use regulation or zoning ordinance which is an invalid exercise of police power may result in a taking, although not all economically viable use of the land is denied:

> Under *Euclid* [*v. Ambler Co.*, 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303 (1926)], a property owner can challenge a zoning restriction if the measure is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id.*, at 395. If the substantive result of the referendum is arbitrary and capricious, bearing no relation to the police power, then the fact that the voters of Eastlake wish it so would not save the restriction.

*Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 676, 96 S. Ct. 2358, 49 L. Ed. 2d 132 (1976) (quoting *Euclid v. Ambler Co.*, 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303 (1926)). Accord, *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987); *Agins v. Tiburon*, 447 U.S. 255, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980); *Penn Central Transp.*

*Co. v. New York City, supra.*

Some decisions have either postulated or inferred that a regulation which goes so far that it has the same effect as a taking by eminent domain as an invalid exercise of the police power is perhaps better phrased or analyzed as a substantive due process claim. *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985); *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990), *cert. denied* 498 U.S. 1120, 111 S. Ct. 1073, 112 L. Ed. 2d 1179 (1991); *Wheeler v. City of Pleasant Grove*, 833 F.2d 267 (11th Cir. 1987), *reh'g denied* 844 F.2d 794 (11th Cir. 1988).

Whatever uncertainty may have existed has been erased by *Nollan v. California Coastal Comm'n, supra*, which was decided in 1987. Although the *Nollan* Court held that the requirement of an easement across beachfront property as a condition to obtaining a development permit represented a permanent physical occupation of a portion of the land requiring compensation, it also wrote that the regulation was not reasonably necessary to substantially advance a legitimate state interest. The *Nollan* Court announced the following standard: "[L]and-use regulation does not effect a taking if it 'substantially advance[s] legitimate state interests' and does not 'den[y] an owner economically viable use of his land.'" 483 U.S. at 834. The *Nollan* Court, it must be noted, formulates a disjunctive test under which a taking results if either element is not met. In addition, the test requires that the regulation substantially advanced the legitimate state interest sought to be achieved, not that the state could rationally have decided that the measure adopted might achieve the state's objective.

Our determination in *Whitehead Oil II*, that in changing the applicable zoning designation the city acted not in furtherance of a legitimate state interest but arbitrarily and capriciously so as to deny Whitehead Oil a use permit, compels our agreement with the district court's ruling that Whitehead Oil's property has been subjected to a taking under the federal Constitution.

### (b) Under State Constitution

The language of the Nebraska constitutional provision is obviously broader than the federal constitutional provision, for

ʿit compensates damage to property as well as the taking of it. Accordingly, recovery has been allowed for damages occasioned by temporary takings. E.g., *Slusarski v. County of Platte*, 226 Neb. 889, 416 N.W.2d 213 (1987) (allegations that counties caused property damage by flooding stated inverse condemnation action); *Wood v. Farwell Irr. Dist.*, 217 Neb. 511, 349 N.W.2d 633 (1984) (reversed summary judgment in favor of irrigation district causing damage by seepage of water); *Armbruster v. Stanton-Pilger Drainage Dist.*, 165 Neb. 459, 86 N.W.2d 56 (1957) (statutory notice not required to maintain action for damages caused by flooding).

We therefore conclude that there has been a taking under the Nebraska Constitution separate and apart from the taking arising under the federal Constitution.

### 3. CIVIL RIGHTS

In the third summarized assignment of error, the city asserts the district court erred in finding that the city violated Whitehead Oil's civil rights.

In relevant part, 42 U.S.C. § 1983 (1988) provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Municipalities are included among those persons to whom the statute applies. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Nor is there any question that a corporation is a person within the meaning of the Equal Protection and Due Process Clauses of the 14th Amendment to the U.S. Constitution. *Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071 (7th Cir. 1978), *cert. denied* 439 U.S. 1121, 99 S. Ct. 1033, 59 L. Ed. 2d 82 (1979), *disapproved on other grounds*, *Fair Assessment in Real Estate Assn. v. McNary*, 454 U.S. 100, 102 S. Ct. 177, 70 L. Ed. 2d 271 (1981).

Although the states have concurrent jurisdiction to entertain § 1983 actions, as a result of the Supremacy Clause found in U.S. Const. art. VI, federal law is controlling and preempts any conflicting state law in determining these claims. *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988); *Maine v. Thiboutot*, 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980).

A violation of one's civil rights may give rise to an award of attorney fees and damages which are not limited to the just compensation for the taking itself. *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990), *cert. denied* 498 U.S. 1120, 111 S. Ct. 1073, 112 L. Ed. 2d 1179 (1991). Although, as developed below in subpart 4 of this part III, Whitehead Oil proves no damages in excess of those arising from the temporary taking of its property, it did seek, and the district court awarded it, an attorney fee. 42 U.S.C. § 1988 (1988) provides that a court may, in its discretion, allow a reasonable attorney fee to one successfully maintaining an action to enforce a provision of § 1983. It has been held that a prevailing party under § 1983 is entitled to attorney fees unless special circumstances would render such an award unjust. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). See *Maine v. Thiboutot, supra*. We thus consider the city's claim that no violation of Whitehead Oil's civil rights occurred.

The court enumerated in *Eide v. Sarasota County, supra*, four recognized challenges to a zoning regulation by a landowner, including a claim that

> the regulation is arbitrary and capricious, does not bear a substantial relation to the public health, safety, morals, or general welfare, and is therefore an invalid exercise of the police power. *See Nectow v. City of Cambridge*, 277 U.S. 183, 236, 48 S.Ct. 447, 448, 72 L.Ed.842 (1928); *Greenbriar v. City of Alabaster*, 881 F.2d 1570, 1577 (11th Cir.1989); *Stansberry v. Holmes*, 613 F.2d 1285, 1289 (5th Cir.), *cert. denied*, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980); *but see Shelton v. City of College Station*, 780 F.2d 475, 482 (5th Cir.1986) (en banc) (zoning is quasi-legislative action, and, therefore, zoning decisions need only have conceivable rational basis), *cert. denied*,

477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566, 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986). We will refer to such a claim as an "arbitrary and capricious due process" claim. This claim is different from a due process takings claim. To prove the latter, a landowner must establish that the regulation goes "too far," destroying the value of the property to such an extent that it has the same effect as a taking by eminent domain. To prove an arbitrary and capricious due process claim, a plaintiff need only prove that the government has acted arbitrarily and capriciously. Such a challenge may be either a facial or an as applied challenge. *Pennell v. City of San Jose*, 485 U.S. 1, 10-12, 108 S.Ct. 849, 857, 99 L.Ed.2d 1 (1988); *Weissman v. Fruchtman*, 700 F.Supp. 746, 752-53 (S.D.N.Y. 1988). For a facial challenge, the remedy is the striking down of the regulation. *Weissman*, 700 F.Supp. at 753. In the case of an as applied challenge, the remedy is an injunction preventing the unconstitutional application of the regulation to plaintiff's property and/or damages resulting from the unconstitutional application.

908 F.2d at 721-22.

Whitehead Oil in essence argues, among other things, that the city's actions violated Whitehead Oil's "arbitrary and capricious due process rights" as described in *Eide*.

It is important to note that the *Eide* decision and other authorities require a ripeness analysis for such a due process claim similar to that which is required for an as-applied takings challenge. *Herrington v. Sonoma County*, 834 F.2d 1488 (9th Cir. 1987), *opinion amended and reh'g denied* 857 F.2d 567 (9th Cir. 1988), *cert. denied* 489 U.S. 1090, 109 S. Ct. 1557, 103 L. Ed. 2d 860 (1989). But see *Smithfield Concerned Citizens v. Town of Smithfield*, 907 F.2d 239 (1st Cir. 1990) (holding that facial substantive due process claim which attacks zoning ordinance in its entirety and not as applied is not bound by same ripeness requirements; in reaching merits, the court held that because change of zone was consistent with comprehensive plan, attack must fail).

Because, as previously discussed in subpart 2(a)(i) of this part III, Whitehead Oil has met the ripeness standard for an

as-applied takings claim, there is no question that the standard has been met for this purpose as well. See *Eide v. Sarasota County, supra*.

The city contends, however, that in determining whether its actions were arbitrary and capricious and thus violated Whitehead Oil's due process rights, we should follow the Eighth Circuit's holding that such due process claims in zoning cases should be viewed with disfavor, and "[w]hether government action is arbitrary or capricious within the meaning of the Constitution turns on whether it is so 'egregious' and 'irrational' that the action exceeds standards of inadvertence and mere errors of law." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990). Accord, *Lemke v. Cass County, Neb.*, 846 F.2d 469 (8th Cir. 1987); *Chesterfield Dev. v. City of Chesterfield*, 963 F.2d 1102 (8th Cir. 1992).

Without necessarily adopting this arguably higher standard than other federal cases cited in our analysis employ, we apply the standard here and conclude that the city, in delaying its action on Whitehead Oil's use permit application until it could change the zoning designation such as to preclude issuance of the permit, did not act in furtherance of the police power in conformance with its comprehensive planning and zoning plan. Rather, its conduct was arbitrary and capricious such as to constitute an egregious and irrational act which exceeded a mere error of law or inadvertence.

Having reached that conclusion, we need not consider whether the city violated Whitehead Oil's civil rights in other respects as well.

That brings us back to the matter of the attorney fee. We have upheld an award of attorney fees when a plaintiff in a § 1983 action prevailed on a pendant state claim based on a common nucleus of operative facts with a substantial federal claim. *Robinson v. City of Omaha*, 242 Neb. 408, 495 N.W.2d 281 (1993). Such being the situation here, the district court did not abuse its discretion in awarding Whitehead Oil an attorney fee.

## 4. DAMAGES
In the fourth and final summarized assignment of error, the

city contends the district court erred in awarding Whitehead Oil damages.

The appropriate measure of damages for the type of takings at issue herein has been best described as follows:

In the case of a temporary regulatory taking, the landowner's loss takes the form of an injury to the property's potential for producing income or an expected profit. *See generally* 7 P. Rohan, Zoning and Land Use Controls § 52A.03[2] (1986 & Supp.1987). The landowner's compensable interest, therefore, is the return on the portion of fair market value that is lost as a result of the regulatory restriction. Accordingly, the landowner should be awarded the market rate return computed over the period of the temporary taking on the difference between the property's fair market value without the regulatory restriction and its fair market value with the restriction. *See Nemmers v. City of Dubuque*, 764 F.2d 502, 505 (8th Cir.1985). Under this approach, the landowner recovers what he lost. To award any affected party additional compensation for lost profits or increased costs of development would be to award double recovery: the relevant fair market values by definition reflect a market estimation of future profits and development costs with respect to the particular property at issue.

*Wheeler v. City of Pleasant Grove*, 833 F.2d 267, 271 (11th Cir. 1987), *reh'g denied* 844 F.2d 794 (11th Cir. 1988). Accord *Nemmers v. City of Dubuque*, 764 F.2d 502 (8th Cir. 1985).

The changed regulation at issue denied Whitehead Oil its request to use its property as it formerly was permitted to do. The property, however, could still be developed for office uses. Whitehead Oil's expert witness testified that the fair market lease value of the property for retail use, if zoned B-2, would be $18,000 per year, and the fair market lease value for office use, zoned O-3, was $6,500 per year. He further opined that the damages as a result of the change of use would be the difference in the fair market lease values for the two uses, amounting to $11,500 per year.

This expert was also of the opinion that under the former B-2

zoning designation, the fair market value of the Whitehead Oil property was $183,500 for retail use. Based upon a 10-percent rate of return, the annual fair market lease value would be approximately $18,000. However, under the changed O-3 zoning designation, office development was the highest and best use, making the fair market value $91,700. However, in his view, the pending litigation regarding the appropriate zoning for the property warranted an additional deduction to $68,700.

Citing *Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 277 N.W.2d 236 (1979), the city first argues that because this expert did not possess facts enabling him to express a reasonably accurate opinion, his testimony should have been stricken, as the city moved. More specifically, the city contends that the five sales on which the witness relied in forming the basis of his opinions took place in areas zoned differently than the changed zoning designation applicable to Whitehead Oil's property. According to the city, one of the sales actually had a different zoning designation than the expert believed it had.

However, while the expert acknowledged that the zoning designation of a particular piece of property was an important factor in determining its value, he testified that when calculating the fair market value of Whitehead Oil's property, he made adjustments to each of the sales as he considered were necessary because of the relative advantages or disadvantages of the particular zoning designations. More importantly, all of the sales he used were in zoning districts which allowed commercial and retail uses, including convenience stores.

We have held:

> The requirement of similarity of compared tracts does not mean that they must be identical, but, rather, that they bear a resemblance to each other. . . . The determination of the similarity of tracts for purposes of deciding the admissibility of sales of such tracts in order to show market value of the tract taken or damaged is to be left largely to the discretion of the trial court.

*Thacker v. State*, 193 Neb. 817, 823-24, 229 N.W.2d 197, 202 (1975). Accord *Clearwater Corp. v. City of Lincoln*, 207 Neb. 750, 301 N.W.2d 328 (1981) (on appeal after remand from the *Clearwater Corp.* decision cited earlier herein). The expert had

an adequate basis for his opinions.

The city also argues that the expert's consideration of the fact that litigation was pending makes his valuation testimony inadmissible. We agree that there can be no pending litigation deduction as such; this element is part consideration that the use of the property has been limited to office applications. A further pending litigation deduction would in essence allow a double recovery to Whitehead Oil.

However, it is apparent that the city suffered no prejudice as a result of this error on the part of the expert, for the district court too rejected his testimony in this regard. Its award of damages of $762.50 per month equates to a $9,150 reduction in the annual lease value or a $91,500 reduction in the fair market value of the property. This is the approximate difference between the expert's estimated fair market value of $183,000 to $183,500 for retail use in a B-2 zone and the $91,700 value for office use in the O-3 zone.

The city also quarrels with the district court's receipt of damages testimony from Whitehead Oil's president and another of its officers; however, it is clear from the damages awarded that the district court did not rely on that testimony. Moreover, we, in our de novo review, ignore that testimony without determining whether the evidence should have been received. See *Nixon v. Harkins*, 220 Neb. 286, 369 N.W.2d 625 (1985) (on de novo review, appellate court ignores evidence improperly admitted over objection).

## IV. ANALYSIS OF WHITEHEAD OIL'S CROSS-APPEAL

In its cross-appeal, Whitehead Oil contends that the damages awarded by the district court are inadequate, for it has not been able to put its land to any viable economic use. In its words:

> [I]t cannot be expected that any person would put the property to an office use during this litigation, unless they were willing to forever surrender their right to put the property to a retail use. It cannot be expected that a person would build an office building with the idea of demolishing or remodeling the building upon final success in the litigation. Likewise, nobody can be expected to pay

rent for the land for offices during this litigation.
Brief for appellee at 50.

It is true that it would be impractical to develop the property for office uses and then destroy it or modify it for use as a convenience store which sells, among other things, gasoline. However, Whitehead Oil made the business decision that it was better to wait upon the resolution of this controversy to develop the property as a convenience store rather than put it to office uses. Under the circumstances, all Whitehead Oil is entitled to receive is compensation for the diminution in the value of its property due to the changed zoning regulation; that is, the difference in the value under the B-2 zoning designation allowing retail use and the O-3 zoning designation disallowing such uses.

## V. JUDGMENT

We independently reach the conclusion that Whitehead Oil has sustained and continues to sustain damages equal to the diminished rental value of its property from the date of the city's refusal to permit use of the land as contemplated by the B-2 zoning designation. This amounts to $762.50 per month. As such damages will continue until the permit is issued, we affirm the decree of the district court, but modify it such that damages shall accrue to the date the city issues the permit Whitehead Oil seeks. As so modified, we affirm the decree of the district court and remand the cause with the direction that it enter a decree in accordance with this opinion.

AFFIRMED AS MODIFIED, AND CAUSE
REMANDED WITH DIRECTION.