GLEN BONGE AND EVELYN BONGE, HUSBAND AND WIFE, APPELLANTS, V. COUNTY OF MADISON, NEBRASKA, APPELLEE.

567 N.W.2d 578

Filed June 3, 1997.   No. A-96-313.

Charles W. Balsiger for appellants.

Joseph M. Smith, Madison County Attorney, for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and INBODY, Judges.

MILLER-LERMAN, Chief Judge.

Glen Bonge and Evelyn Bonge, husband and wife, brought an action in the nature of inverse condemnation against Madison County, Nebraska (County), for damages allegedly sustained when the County enacted certain flood plain regulations applicable to land owned by the Bonges. During the course of a jury trial, the district court for Madison County sustained the County's motion for directed verdict and dismissed the Bonges' amended petition. The Bonges appeal. For the reasons recited below, we affirm the order of the district court.

## BACKGROUND

On July 11, 1994, the Bonges filed an amended petition, alleging that a 1992 Madison County resolution relating to restrictions on floodway areas denied the Bonges all economically beneficial and productive uses of certain property owned by the Bonges, particularly use as a mobile home park or a residential recreation district. A jury trial was held in February 1996, during which the following evidence was adduced:

In the late 1960's, the Bonges acquired an interest in a parcel of land in Madison County, referred to by the parties to this action as "Sandy Beach." Sandy Beach was purchased by the Bonges in 1980 and is zoned "R-M," or mobile residential district. Glen Bonge testified regarding improvements he made to the property after taking possession, including installation of waterlines and building of roads. In 1970, the Bonges began using Sandy Beach as a mobile home park.

In 1984, a fire inspector found 47 violations, most of which were in the mobile homes. In addition, the state Department of Health found water quality and septic system problems on the property. In response, the Bonges drilled a new well, installed a chlorine injection system, and built a lagoon. Nonetheless, in January 1984, the Madison County District Court enjoined the Bonges from operating the mobile home park without a license.

Glen Bonge testified that he thereafter made additional improvements on the property, including installation of a new sanitary sewer and a new water system, with the intention to reopen Sandy Beach as a mobile home park. Glen Bonge stated that the new water system meets Department of Health require-

ments, but admitted that he had not checked the department's rules and regulations and did not notify the department for approval before making the improvements. At one point, Glen Bonge applied to have the property rezoned as "R-R," or residential recreation district, but his request was denied by both the planning commission and the county commissioners.

Richard Wozniak, the zoning administrator and planner for Madison County, testified that the Sandy Beach property has been zoned R-M since 1975, when Madison County first adopted a zoning and subdivision ordinance. Wozniak testified that beginning in 1987, the counties became responsible for flood plain management. In 1987, in response to Federal Emergency Management Agency requirements, Madison County passed resolution No. 87-22, which identified as the "official map," a 1978 "Flood Hazard Boundary Map" prepared by the U.S. Department of Housing and Urban Development. In 1992, Madison County passed resolution No. 92-39, which incorporated the boundary map into the floodway fringe area of the zoning districts. Wozniak testified that the entirety of the Bonges' land lies within the floodway and flood plain. It is resolution No. 92-39 which the Bonges deem to constitute a taking.

Ransom Roman, a real estate appraiser, testified that the value of Sandy Beach, if vacant and subject to flood plain regulations, was $14,000. Without the flood plain regulations, he stated that the property was worth $193,000. Roman testified that his appraisal of the land without flood plain regulations was the same amount whether the land was zoned R-M or R-R. He stated that his appraisal was based on the use of the land as a "mobile home RV [recreational vehicle] park."

At the close of the Bonges' evidence, the County moved for a directed verdict, which motion was sustained by the district court. The court ordered that a verdict be entered for the County and that the Bonges' amended petition be dismissed. The Bonges have appealed to this court.

## ASSIGNMENTS OF ERROR

The Bonges argue that the district court erred in (1) finding that the 1984 restraining order and the Bonges' failure to obtain licensing to operate a mobile home park were the proximate

causes of their damages and (2) sustaining the County's motion for directed verdict and refusing to submit the case to the jury.

## STANDARD OF REVIEW

When a trial court sustains a motion to dismiss, it resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw only one conclusion. *Estate of Stine v. Chambanco, Inc.*, 251 Neb. 867, 560 N.W.2d 424 (1997). In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. In order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion from the evidence. *Helmstadter v. North Am. Biological*, 5 Neb. App. 440, 559 N.W.2d 794 (1997). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Norris v. Hathaway*, 5 Neb. App. 544, 561 N.W.2d 583 (1997).

## ANALYSIS

The Bonges seek damages in inverse condemnation. Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings. *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 680, 515 N.W.2d 401 (1994).

Relying on *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992), the Bonges argue that a taking exists in this case because they have been denied the "economically viable use" of their land because of the County's enactment of flood plain regulations in 1992. We note that the opinion in *Lucas*, upon which the Bonges rely, also states that land-use challenges are not ripe for review until

there has been a final decision about what uses of the property will be permitted.

In the case at bar, the Bonges have neither pleaded nor proved that following enactment of the flood plain regulations, they applied to the County for a license or permit to use Sandy Beach as a mobile home park. Glen Bonge testified that he applied to the Madison County zoning authority to rezone Sandy Beach from M-R to R-R, but that the application was denied. The record does not reflect the exact date of this application. Thereafter, in 1992, in the same timeframe during which the County's zoning ordinance was amended, the Bonges submitted an amended application for rezoning but withdrew it when they realized that "[they] had some problems with the amendment [to the zoning ordinance]." Glen Bonge testified that the instant action was filed after the Bonges withdrew their amended application for rezoning.

There is no dispute in the record that the County has not arrived at a definite position on the Bonges' application to use Sandy Beach as a mobile home park or residential recreation district. Furthermore, there is no dispute that the Bonges have not applied for any one of the "Permitted Uses" which are allowed in the flood plain regulations, which purposes include recreational uses such as hiking trails or golf courses, boat launching ramps, or loading areas. Therefore, there is no showing of an actual, concrete injury to the Bonges, and their claim is not yet ripe. Referring specifically to inverse condemnation actions, it has been stated: "Courts will not speculate how regulations will be applied to property until landowners have availed themselves of all procedures for application of the regulation to the property." 6 Nichols' The Law of Eminent Domain § 25.02[5] at 25-15 (rev. 3d ed. 1997). See, also, e.g., *Christopher Lake Development Co. v. St. Louis Cty.*, 35 F.3d 1269 (8th Cir. 1994); *Eide v. Sarasota County*, 908 F.2d 716 (11th Cir. 1990); *Messer v. Town of Chapel Hill*, 479 S.E.2d 221 (N.C. App. 1997); *Wheeler v. City of Wayzata*, 511 N.W.2d 39 (Minn. App. 1994), *rev'd on other grounds*, 533 N.W.2d 405 (1995). In *Wheeler v. City of Wayzata, supra,* the Minnesota court, commenting on ripeness, noted that "to establish that a . . . regulation constitutes a taking, the landowner bears the bur-

den of showing not only that all primary uses are unreasonable, but also that no reasonable secondary use (one permitted by special use permit or variance) is available." 511 N.W.2d at 42. The record further shows that the present case is not one in which the County's past actions establish that an application in the future would be futile. See *Whitehead Oil Co. v. City of Lincoln, supra* (holding that where plaintiffs had previously been denied their request for use permit, they need not again exhaust administrative remedies before asserting their taking claim because they are not required to perform futile act), citing *Eide v. Sarasota County, supra.* In the case at bar, it is undisputed that the Bonges withdrew their amended application for rezoning and that the County has never denied the Bonges' application based on the flood plain regulations.

Because the Bonges have neither sought nor received a final decision on the application of the flood plain regulations to their property, their taking claim is not ripe. We, therefore, affirm the decision of the district court to dismiss the Bonges' amended petition.

AFFIRMED.