GLEN BONGE AND EVELYN BONGE, HUSBAND AND WIFE, APPELLANTS, V. COUNTY OF MADISON, STATE OF NEBRASKA, APPELLEE.

573 N.W. 2d 448

Filed February 6, 1998.   No. S-96-313.

Charles W. Balsiger, P.C., for appellants.

Joseph M. Smith, Madison County Attorney, for appellee.

CAPORALE, WRIGHT, CONNOLLY, STEPHAN, and MCCORMACK, JJ.

WRIGHT, J.

Glen Bonge and Evelyn Bonge, husband and wife, brought this inverse condemnation action against the County of Madison (County) for damages allegedly sustained when the County enacted certain flood plain management regulations applicable to land owned by the Bonges. During the course of a jury trial, the district court sustained the County's motion for a directed verdict and dismissed the action. The Bonges appealed to the Nebraska Court of Appeals, which affirmed the judgment of the district court. See *Bonge v. County of Madison*, 5 Neb. App. 760, 567 N.W.2d 578 (1997). We granted the Bonges' petition for further review.

## SCOPE OF REVIEW

Whether an unconstitutional regulatory takings case is ripe for adjudication is a question of law. *Ventures Northwest Ltd. v. State*, 81 Wash. App. 353, 914 P.2d 1180 (1996).

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. Hall*, 252 Neb. 885, 566 N.W.2d 121 (1997). See *State v. Wieczorek*, 252 Neb. 705, 565 N.W.2d 481 (1997).

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision. *Perryman v. Nebraska Dept. of Corr. Servs., ante* p. 66, 568 N.W.2d 241 (1997). See, also, *Reutzel v. Reutzel*, 252 Neb. 354, 562 N.W.2d 351 (1997).

## FACTS

In 1968 or 1969, the Bonges entered into a lease-purchase agreement for certain property in Madison County referred to as "Sandy Beach." The Bonges made improvements to what was originally an abandoned gravel pit, and in 1970, they began using Sandy Beach as a mobile home park. The property was ultimately purchased in 1980.

In 1975, the County adopted comprehensive zoning and subdivision regulations. Richard Wozniak, the zoning administrator

and planner for the County, testified that Sandy Beach was initially zoned "R-M" (mobile residential district) and that it had not been rezoned. The 1975 zoning and subdivision regulations included flood plain regulations. However, spaces provided to delineate those areas to which the flood plain regulations applied were left blank.

In 1984, the Bonges were cited for 47 violations by a fire inspector, and the Madison County District Court enjoined them from continuing to operate the mobile home park without a license. Glen Bonge testified that after the injunction was issued, he made additional improvements to the property with the intention of redeveloping it as a residential recreation area. Among other improvements, the Bonges installed a new sanitary sewer and a new water system and improved the roads. Glen Bonge further testified that the bottom of the wastewater lagoon was raised to a level that would be above the 100-year flood plain. This was done in order to meet new standards that were being set by the then Department of Health. However, Glen Bonge admitted that he had not checked the department's rules and regulations and did not notify the department for approval before making these improvements.

As of the date of his testimony in February 1996, Glen Bonge had not applied to the department for the license required to lift the 1984 injunction. However, despite the fact that a number of items on the property had been in disuse, Glen Bonge believed he would be able to immediately bring those items up to the department's specifications. Glen Bonge testified that at some point after 1985, he applied to have the property rezoned from "R-M" to "R-R" (residential recreation district), and, based upon his understanding of the flood plain management regulations at that time, he requested a special use permit to add accessory buildings for a campground. Glen Bonge testified that the application was denied; however, there is no evidence in the record as to the reason for the denial. Glen Bonge stated that he resubmitted the application in 1992, but thereafter, he voluntarily withdrew it.

In 1987, in response to Federal Emergency Management Agency requirements and in order to retain its flood insurance program, the County passed resolution No. 87-22, which

adopted a federal "Flood Hazard Boundary Map" prepared by the U.S. Department of Housing and Urban Development as its official map. On November 17, 1992, the County passed resolution No. 92-39, which incorporated the boundary map into the floodway fringe area of the zoning district. The Bonges' land lies within the flood plain, and it is resolution No. 92-39 which the Bonges assert constitutes a taking by the County.

The flood plain management regulations do not include a mobile home park as one of the specified "Permitted Uses." Ransom Roman, a real estate appraiser, testified that "the highest and best use" of Sandy Beach, if the property was subject to the restrictions of the flood plain management regulations, was as pasture ground. Roman estimated the value of the land as pasture ground to be $14,000. In contrast, Roman testified that if the Bonges were allowed to use the land for some form of a mobile home park, regardless of whether it was zoned R-M or R-R, the value would be $193,000.

At the close of the Bonges' evidence, the district court sustained the County's motion for directed verdict on the grounds that the Bonges had failed to prove causation and damages, and dismissed the action. The Bonges appealed to the Court of Appeals, which concluded that because the Bonges have neither sought nor received a final decision on the application of the flood plain management regulations and have failed to show that such an application would be futile, the Bonges' claim is not ripe. The Court of Appeals therefore affirmed the judgment of the district court.

## ASSIGNMENTS OF ERROR

The Bonges assert that the Court of Appeals erred in (1) finding that they had failed to exhaust their administrative remedies, (2) finding that their claim is not ripe, and (3) affirming the district court order sustaining the County's motion for directed verdict.

## ANALYSIS

The Court of Appeals correctly concluded that because the Bonges have neither sought nor received a final decision on the application of the flood plain management regulations to their property, their taking claim is not ripe. Before a taking claim is

ripe for review, there must be a final and authoritative determination of the type and intensity of development legally permitted on the subject property. *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S. Ct. 2561, 91 L. Ed. 2d 285 (1986). In *MacDonald, Sommer & Frates*, the Court explained that "[u]ntil a property owner has 'obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property,' 'it is impossible to tell whether the land retain[s] any reasonable beneficial use or whether [existing] expectation interests ha[ve] been destroyed.'" 477 U.S. at 349, quoting *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985). Generally, to attain a final decision in regulatory takings cases, there must be at least (1) a rejection of a development plan and (2) a denial of a variance where the statute or bylaw at issue provides for such exceptions. See, *Thompson v. City of Red Wing*, 455 N.W.2d 512 (Minn. App. 1990); *Town of Sunnyvale v. Mayhew*, 905 S.W.2d 234 (Tex. App. 1994).

An exception to the requirement of obtaining a final decision in regulatory takings cases occurs where a plaintiff is able to show that administrative remedies would be futile. See *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 680, 515 N.W.2d 401 (1994). In *Whitehead Oil Co.*, the city argued that we should not reach the oil company's claim because the city had taken no final action against the oil company under the current O-3 zoning designation. We pointed out that this argument ignored the fact that the city had indeed taken final action when it denied the oil company's application for a use permit. We then rejected the argument that the oil company was required to seek a variance from the city's board of zoning appeals which would permit the desired use despite the zoning restriction. We explained that a request for variance would be futile in light of the city's past actions in denying the permit and the fact that the city's board of zoning appeals did not have the power to grant the desired variance.

In contrast, in *Paragon Properties v Novi*, 452 Mich. 568, 550 N.W.2d 772 (1996), a property owner brought an action against the city, alleging the unconstitutional taking of its property when the city denied the owner's request to rezone the

property from single-family residential to mobile home district. The court noted that the zoning board of appeals had the administrative authority to permit uses that would otherwise not be permitted under a zoning ordinance and held that the city's denial of the rezoning request absent a request for variance was not a final decision. The court explained that there was no information regarding the potential uses of the property that might have been permitted and that there was no information regarding the extent to which the owner may have been injured as a result of the ordinance. The court rejected the owner's contention that because variances were to be sparingly granted, any application for a variance would be futile. See, also, *Galbraith v. Planning Dept.*, 627 N.E.2d 850 (Ind. App. 1994) (inverse condemnation action challenging rezoning as floodway not ripe where landowners failed to seek final administrative determination from both agencies named in ordinance); *Presbytery of Seattle v. King County*, 114 Wash. 2d 320, 787 P.2d 907 (1990) (inverse condemnation claim as to wetlands ordinance was not ripe because of landowner's failure to exhaust administrative remedies by applying for building permit which would have resulted in determination of what uses of property were permissible and to what extent).

It is undisputed that the County has not arrived at a definite position on the Bonges' application to use Sandy Beach as a mobile home park or a residential recreation district, and we reject the Bonges' contention that such application would be futile. Resolution No. 92-39, § 6, provides that a variance to the flood plain and floodway regulations may be granted by the board of adjustment if the applicant demonstrates that (1) the proposed development will not increase flood heights; (2) the proposed development is not within a wetland; (3) the proposed development does not require an Army Corps of Engineers § 404 permit; (4) there is no objection from the Lower Elkhorn Natural Resources District; (5) the proposed development will not create threats to the health, safety, and general welfare of any person; (6) the proposed development will not cause damage from any form of material which may move downstream from the proposed development and cause an extraordinary public expense and create nuisances; and (7) an exceptional

hardship exists that is other than economic or financial alone. The granting of a variance clearly falls within the board of adjustment's powers, as defined by Neb. Rev. Stat. § 23-168.03 (Reissue 1991). The Bonges have failed to show that it would be futile to apply to the board of adjustment for a variance to use Sandy Beach as a mobile home park, and therefore, their inverse condemnation action is not ripe for our review.

The Bonges assert that even if the Court of Appeals was correct in its determination that the action is not ripe, the decision affirming the district court's directed verdict is erroneous because the district court lacked jurisdiction over the action. We agree. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. Hall*, 252 Neb. 885, 566 N.W.2d 121 (1997). See *State v. Wieczorek*, 252 Neb. 705, 565 N.W.2d 481 (1997).

In *Iowa Coal Min. Co. v. Monroe County*, 555 N.W.2d 418, 432 (Iowa 1996), an inverse condemnation case based on certain zoning ordinances, the court noted that "[i]f a claim is not ripe for adjudication, a court is without jurisdiction to hear the claim and must dismiss it." The court explained that the "basic rationale" for the ripeness doctrine "'is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Id.* at 432, quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).

Similarly, in *Cumberland Farms, Inc. v. Town of Groton*, 46 Conn. App. 514, 699 A.2d 310 (1997), the appellate court affirmed the trial court's dismissal for lack of jurisdiction after holding that a landowner's inverse condemnation action was premature because its appeal for a variance to zoning regulations was still pending. The appellate court explained that "[u]ntil that appeal has been completed it is impossible to know the extent of the loss, if any, suffered by the plaintiff." *Id.* at

518, 699 A.2d at 313. We find that the rationale expressed in *Iowa Coal Min. Co.* and *Cumberland Farms, Inc.* is applicable to the case at bar.

The district court made a determination that the Bonges had failed to prove causation and damages, and granted a directed verdict in favor of the County. A judgment on a directed verdict is a judgment on the merits. See *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994). Because the district court lacked jurisdiction, it should not have entered a judgment on the merits, and the Court of Appeals erred in affirming the district court's judgment. We therefore reverse the decision of the Court of Appeals and remand the cause to that court with directions to remand the cause to the district court with directions to dismiss for lack of jurisdiction.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, C.J., participating on briefs.

GERRARD, J., not participating.