IN RE COMPLAINTS OF MCLEOD TELEMANAGEMENT, INC.,
ET AL. AGAINST U S WEST COMMUNICATIONS, INC.
MCLEOD TELEMANAGEMENT, INC., ET AL., APPELLANTS, V.
U S WEST COMMUNICATIONS, INC., APPELLEE.

583 N.W.2d 39

Filed August 14, 1998.    No. S-97-112.

Steven G. Seglin, of Crosby, Guenzel, Davis, Kessner & Kuester; David R. Conn; and Karen L. Clauson for appellants McLeod Telemanagement and MCI Telecommunications.

Andrew S. Pollock, of Knudsen, Berkheimer, Richardson, Endacott & Routh; Mary B. Tribby; and Peggy Graham for appellant AT&T Communications of the Midwest.

Richard L. Johnson for U S West.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and McCORMACK, JJ.

WHITE, C.J.

This case involves the combined appeal of McLeod Telemanagement, Inc. (McLeod), MCI Telecommunications Corporation (MCI), and AT&T Communications of the Midwest, Inc. (AT&T) (collectively appellants), from the opinion and findings of the Nebraska Public Service Commission (PSC) on appellants' three formal complaints alleging U S West Communications, Inc. (U S West), illegally grandfathered its Centrex Plus telecommunications service in contravention of both state law and the federal Telecommunications Act of 1996, 47 U.S.C.A. § 151 et seq. (West 1991 & Supp. 1998). We

removed this case to our docket pursuant to our authority to regulate the caseloads of the Nebraska Court of Appeals and this court. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

U S West is authorized to provide local telephone service in the Nebraska market. In conducting business as a local exchange carrier, U S West has developed various telecommunications services designed to benefit the telecommunications needs of businesses. One such service is Centrex Plus. Centrex Plus is a central-office-based switching service designed to meet the needs of U S West's business customers utilizing 2 to 100-plus lines. The system operates within a U S West central office and offers calling features such as call hold, call transfer, and three-way calling.

On February 5, 1996, U S West filed a rate list with the PSC. Through filing the rate list, U S West announced its intention to partially withdraw Centrex Plus from the Nebraska market by grandfathering the service for existing customers. Pursuant to the PSC's telecommunications rules and regulations, U S West's rate list would become effective on February 16. The rate list also revealed that U S West would discontinue offering Centrex Plus to new telecommunications customers once the rate list became effective. In addition to the grandfathering announcement, U S West also announced its intention to introduce a successor service to the retail market within 6 to 9 months from removing Centrex Plus from the market. As of December, U S West had not introduced a service to replace Centrex Plus.

On February 8, 1996, the federal Telecommunications Act became effective. The act was passed to facilitate the entry of competing companies into local telephone-service markets across the country. See, *Iowa Utilities Bd. v. F.C.C.*, 120 F.3d 753 (8th Cir. 1997), *cert. granted, AT&T Corp. v. Iowa Utilities Board*, 522 U.S. 1089, 118 S. Ct. 879, 139 L. Ed. 2d 867 (1998); *GTE South Inc. v. Morrison*, 957 F. Supp. 800 (1997). To facilitate such entry, the act requires each incumbent local exchange carrier (ILEC), such as U S West, to offer for resale at wholesale rates any telecommunications service which an ILEC sells at retail to subscribers who are not telecommunications carriers. See § 251. The act also prevents any unreasonable or discriminatory limitations on the resale of such services. *Id.*

On February 12, 1996, McLeod and MCI objected to U S West's withdrawal of Centrex Plus by filing virtually identical formal complaints with the PSC. On March 21, AT&T also objected to U S West's withdrawal of Centrex Plus by filing a complaint similar to those complaints filed by McLeod and MCI. The complaints set forth appellants' general allegation that U S West's grandfathering of Centrex Plus was discriminatory and contrary to federal and state law. The complaints also set forth appellants' specific allegations that U S West's act of withdrawing the availability of Centrex Plus to new customers violated § 251(b)(1), (c)(2), and (c)(4) of the act. The complaints further allege that the "primary effect" of U S West's withdrawal of Centrex Plus precludes McLeod, MCI, and "other prospective customers from offering local exchange service in Nebraska by reselling Centrex Plus service."

At the time that McLeod and MCI filed their complaints with the PSC, neither corporation had filed an application for authority to provide local exchange service in Nebraska. Even though AT&T had filed an application for authority to provide local exchange service in Nebraska, its application was still pending at the time it filed a formal complaint with the PSC. The record does not reveal whether AT&T has been authorized to provide local service in Nebraska.

On May 30, 1996, the PSC held a hearing on the issues presented by appellants' formal complaints. On November 25, the PSC, in a 4-to-1 decision, partially sustained and partially denied appellants' formal complaints. On December 13, appellants filed a joint motion for rehearing. On January 13, 1997, the PSC denied appellants' motion. Appellants timely appealed, and we removed this case to our docket.

In appealing the decision of the PSC, AT&T filed a separate brief from that of McLeod and MCI. The substance of the assertions set forth in AT&T's assignments of error is virtually identical to that of the errors assigned by McLeod and MCI. Therefore, we shall consider appellants' assignments of error collectively. Appellants assert, restated, that the PSC erred in (1) holding that U S West's partial withdrawal of Centrex Plus did not violate state law, (2) holding that U S West could partially withdraw Centrex Plus by filing a rate list with the PSC

rather than filing a tariff change, (3) holding that U S West's partial withdrawal of Centrex Plus was not an unreasonable and discriminatory condition or limitation on the resale of a telecommunications service, in violation of § 251(b)(1) and (c)(4)(B) of the act, and (4) failing to make a determination whether the PSC's decision authorizing U S West to partially withdraw Centrex Plus prohibits McLeod, MCI, and AT&T from providing intrastate telecommunications service, in violation of § 253(a) of the act.

In an appeal from the PSC, an appellate court examines the record to determine whether the PSC acted within the scope of its authority and whether the evidence establishes that the order in question is not unreasonable or arbitrary. *In re Application of Jantzen*, 245 Neb. 81, 511 N.W.2d 504 (1994); *Fecht v. Quality Processing*, 244 Neb. 522, 508 N.W.2d 236 (1993).

Appellants' first assignment of error sets forth their assertion that U S West's partial withdrawal of Centrex Plus violates state law. Before considering the merits of appellants' arguments, it is the duty of this court to determine whether we have jurisdiction over the subject matter of this case, regardless of whether the parties have questioned the jurisdiction of the lower court or tribunal. *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996). A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Bonge v. County of Madison*, 253 Neb. 903, 573 N.W.2d 448 (1998). As a result, this court is required to reach a conclusion independent from the lower court's decision. *Id.*

In making the argument that U S West has violated state law, appellants rely upon Neb. Rev. Stat. § 86-801 (Reissue 1994). Section 86-801 sets out a general legislative policy on the provision of telecommunications services in Nebraska. The policy specifically calls.for (1) the preservation of affordable rates, (2) the maintenance and advancement of the efficiency and availability of telecommunications services, (3) the payment of reasonable charges for telecommunications services, and (4) the promotion of diversity in the supply of telecommunications services and products. Although it is questionable whether these provisions are actually enforceable, we must first resolve any jurisdictional questions. See *In re Interest of D.W., supra*.

Neb. Const. art. IV, § 20, empowers the PSC to regulate common carriers. Article IV, § 20, provides: "The powers and duties of [the PSC] shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the [PSC] shall exercise the powers and perform the duties enumerated in this provision."

The PSC, except as provided in § 86-801 through Neb. Rev. Stat. § 86-811 (Reissue 1994), has the power to regulate telecommunications companies pursuant to § 86-803(1). The general powers granted by article IV, § 20, however, may be limited by specific legislation. See *State ex. rel. Spire v. Northwestern Bell Tel. Co.*, 233 Neb. 262, 445 N.W.2d 284 (1989). Therefore, we must determine whether the PSC has jurisdiction to enforce § 86-801.

In § 86-811, the Legislature specifically established, in part:

> If any telecommunications company violates any provisions of sections 75-109, 75-604, and 75-609 or 86-801 to 86-810, any interested person may petition the district court of the county in which such alleged violation has occurred. If it appears to the court, after a hearing, that a provision of such sections has been violated, the court may issue an injunction or other proper process to restrain the telecommunications company and its directors, officers, employees, or agents from continuing such violation and may order additional relief.

Thus, through § 86-811, the Legislature has granted the district court for the county in which a violation of §§ 86-801 to 86-810 occurred the authority to grant relief for such a violation. Appellants filed their complaints alleging U S West violated § 86-801 with the PSC and not in a district court as authorized by § 86-811. The PSC was without jurisdiction to consider whether U S West's actions violated § 86-801.

When an appeal is taken from a court which lacked jurisdiction, the appellate court acquires no jurisdiction. *Becker v. Nebraska Acct. & Disclosure Comm.*, 249 Neb. 28, 541 N.W.2d 36 (1995); *Dittrich v. Nebraska Dept. of Corr. Servs.*, 248 Neb. 818, 539 N.W.2d 432 (1995). Consequently, this court is also without jurisdiction to consider the merits of appellants' state law claim based on § 86-801.

We now turn to appellants' remaining arguments that U S West violated state law and appellants' remaining assignments of error. Due to the fact that appellants filed their formal complaints with the PSC prior to being authorized to provide local exchange service in Nebraska, the court is presented with the issue of whether appellants have the requisite standing to raise the remaining issues presented by appellants' assignments of error.

Before a party is entitled to invoke a court's jurisdiction, that party must have standing to sue. *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996); *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996); *In re Interest of Archie C.*, 250 Neb. 123, 547 N.W.2d 913 (1996); *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996); *City of Ralston v. Balka*, 247 Neb. 773, 530 N.W.2d 594 (1995). Standing is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court. Because the requirement of standing is fundamental to a court's exercise of jurisdiction, a litigant or a court before which a case is pending can raise the question of standing at any time during the proceeding. *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998). The purpose of a standing inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Metropolitan Utilities Dist. v. Twin Platte NRD, supra*; *In re Interest of Archie C., supra*; *Marten v. Staab, supra*; *City of Ralston v. Balka, supra.*

In Nebraska, an entity may not provide telecommunications services without the approval of the PSC. The PSC's regulatory power in the telecommunications area emanates from article IV, § 20, of the Nebraska Constitution. Article IV, § 20, provides that "[t]he powers and duties of [the PSC] shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law." The Legislature has empowered the PSC to regulate the entry of telecommunications carriers into the Nebraska marketplace through Neb. Rev. Stat § 75-604 (Reissue 1996) and § 86-805. The pertinent portion of § 75-604 provides:

(1) Except as provided in section 86-805, no person, firm, partnership, limited liability company, corporation, cooperative, or association shall offer any telecommunications service or shall construct new telecommunications facilities in or extend existing telecommunications facilities into the territory of another telecommunications company for the purpose of providing any telecommunications service without first making an application for and receiving from the [PSC] a certificate of convenience and necessity, after due notice and hearing under the rules and regulations of the [PSC].

The pertinent portion of § 86-805 provides:

(1) The commission may issue a certificate authorizing any telecommunications company which so applies to the commission to offer and provide inter-LATA [local access transport area] interexchange services, which application shall include such information as may be required by the commission under duly adopted and promulgated rules and regulations.

In order to provide telecommunications service in Nebraska, McLeod, MCI, and AT&T must be approved by the PSC.

As stated above, the purpose of a standing inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. In this case, appellants do not have a legally protectable interest in the controversy that would benefit by the relief granted. Appellants request this court to reverse the PSC's opinion and findings and order U S West to (1) remove Centrex Plus from its grandfathered status and (2) offer Centrex Plus at retail so that appellants may resell the service under the terms of the act. However, appellants were not licensed to provide telecommunications services in the Nebraska market at the time appellants filed their complaints. Even if we were to grant the relief requested, appellants would not receive any recognizable benefit because they are not authorized to provide local telephone services in Nebraska. Appellants do not have the requisite standing to raise issues presented by the remaining assignments of error.

Consequently, the opinion and findings of the PSC are hereby reversed. Upon remand, the PSC is directed to dismiss appellants' complaints, as the PSC lacked jurisdiction to consider appellants' § 86-801 argument and appellants lacked standing to bring the remaining issues before the PSC.

REVERSED AND REMANDED WITH DIRECTION TO DISMISS.

STEPHAN, J., not participating.